NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3586

CRUZ ET AL., APPELLANTS, *v*. ENGLISH NANNY & GOVERNESS SCHOOL ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cruz v. English Nanny & Governess School*, Slip Opinion No. 2022-Ohio-3586.]

*Torts—Attorney fees—Prevailing parties who were awarded reasonable attorney fees along with a punitive-damages award at trial may also recover attorney fees that they incur in successfully defending their judgment on appeal—Court of appeals' judgment reversed.*

(No. 2020-1247—Submitted January 25, 2022—Decided October 12, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County,
No. 108767, 2020-Ohio-4216.

_____

**STEWART, J.**

{¶ 1} In this discretionary appeal, we are asked to decide whether prevailing parties who were awarded reasonable attorney fees along with a punitive-damages

award in a tort case involving malicious conduct may also recover the attorney fees that they incur in successfully defending their judgment. The Eighth District Court of Appeals held that they may not and reversed the trial court's award of attorney fees relating to the prevailing parties' appeal. 2020-Ohio-4216, ¶ 58-60. The Eighth District concluded that "Ohio law does not permit recovery of appellate attorney fees except in cases involving remedial statutes," and because "[p]laintiffs' claims were not based on any remedial statute," they were "not entitled to recovery of attorney fees generated in defending their judgment." *Id.* at ¶ 58. We disagree and therefore reverse the Eighth District's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In November 2011, plaintiffs-appellants, Christina Cruz and Heidi Kaiser, filed a complaint against defendants-appellees, English Nanny & Governess School (the "School"), English Nannies, Inc. (the "Placement Agency"), Sheilagh Roth, and Bradford Gaylord (collectively, "defendants" or the "EN&G defendants"). Cruz alleged claims of negligent and intentional infliction of emotional distress, wrongful termination against public policy, defamation, and breach of contract. Kaiser alleged claims of wrongful termination against public policy and defamation.

{¶ 3} In May 2015, the case proceeded to a 26-day jury trial. The following evidence was presented at trial.

{¶ 4} Roth founded the School, which had been training certified professional nannies and governesses since 1985. Roth was the executive director of the School, and Gaylord was the director of operations for the Placement Agency, which placed graduates of the School with families requesting a nanny or a governess. All graduates of the School entered into an "exclusive placement agreement," whereby the Placement Agency promised to "make all possible efforts to arrange interviews for students with perspective employers," and the students

2

agreed to give "exclusive placement rights" to the agency for three months following graduation.

{¶ 5} Cruz graduated from the School in June 2011, and Kaiser worked as a placement coordinator at that time, matching students who had graduated from the School with families looking for a nanny. Shortly after Cruz graduated, Kaiser arranged for her to spend a weekend interviewing with a single father and his two minor daughters. While on the interview, Cruz witnessed what she believed was the father engaging in sexual activity with one of his daughters. As soon as Cruz returned home, she called Kaiser and told her about the suspected sexual abuse. Kaiser then relayed Cruz's account of the suspected sexual abuse to Gaylord.

{¶ 6} Kaiser testified that Roth and Gaylord told her to tell Cruz "not to report" the abuse to social services. Kaiser refused to do so and warned Cruz that Roth and Gaylord "wanted [Cruz] blackballed." Roth and Gaylord terminated Kaiser approximately one week after Kaiser told Gaylord that Cruz saw what she believed was sexual abuse.

{¶ 7} Roth and Gaylord discouraged Cruz from reporting the sexual abuse to social services. Gaylord purportedly stated that if Cruz reported the abuse, he would make sure that she did not work in the nanny profession. Roth and Gaylord ultimately withheld employment opportunities from Cruz. A licensed social worker at the School, who also taught a course on recognizing and preventing child abuse, testified that Roth told her that Cruz could not be trusted and was "unstable." At trial, Roth testified that she had stopped attempting to place Cruz based on alleged concerns over Cruz's mental health and because Cruz had supposedly asked to be released from the exclusive-placement agreement. However, in an August 2011 letter that Roth sent to Cruz, Roth blamed the inability to find a placement for Cruz on "the current economy," which Roth said had made the business "extremely slow."

**{¶ 8}** The jury found in favor of Cruz and against the defendants on her claim of intentional infliction of emotional distress and awarded her $150,000 in compensatory damages ($75,000 for noneconomic damages and $75,000 for economic damages). The jury also found in favor of Cruz on her breach-of-contract claim against the Placement Agency but awarded her only $10 in compensatory damages. Additionally, the jury awarded Cruz punitive damages against the Placement Agency in the amount of $50,000, against Roth in the amount of $68,750, and against Gaylord in the amount of $50,000, plus reasonable attorney fees.[1]

**{¶ 9}** With respect to Kaiser, the jury found in her favor against the School and the Placement Agency on her claim of wrongful discharge in violation of public policy. The jury awarded her $20,000 in compensatory damages. The jury also awarded Kaiser punitive damages against the School and the Placement Agency in the amount of $54,000 each, plus reasonable attorney fees.

**{¶ 10}** The parties filed several postverdict motions, including Cruz and Kaiser's motion for attorney fees and expenses and defendants' motion for a mistrial, motion to cap plaintiffs' punitive-damages awards, motion for judgment notwithstanding the verdict, and motion for a new trial and remittitur. The trial court denied defendants' motions for a mistrial, judgment notwithstanding the verdict, and for a new trial, but it granted defendants' motions for remittitur and to cap punitive damages. The court reduced Cruz's economic damages from $75,000 to zero, reduced her punitive damages against the Placement Agency from $50,000 to zero, and reduced her punitive damages against Gaylord from $50,000 to

---

1. The jury also found in favor of the School on its counterclaim against Cruz for breach of contract, awarding the School $8,262.24. Additionally, the jury found in favor of Cruz against the School for punitive damages but awarded her $0 in punitive damages. The jury further found that the School should not be liable for Cruz's attorney fees.

$28,258. The court also reduced Kaiser's punitive damages against the Placement Agency to zero and against the School to $10,311.

**{¶ 11}** Regarding attorney fees, Cruz and Kaiser's attorneys requested fees in the amount of $540,277.11 based on the lodestar calculation (i.e., reasonable hourly rate multiplied by the number of hours worked). After a subsequent hearing on attorney fees, the trial court determined that the lodestar amount should be $191,000 plus expenses, for a total of $208,782.87. But because Cruz and Kaiser had signed a contingency-fee agreement, the trial court ordered defendants to pay only $95,308.97 in attorney fees and expenses.[2] However, on plaintiffs' motion for reconsideration, the trial court awarded an additional $30,195.48 in litigation expenses, bringing the total award of attorney fees and expenses to $125,504.45.

**{¶ 12}** The EN&G defendants appealed and Cruz and Kaiser cross-appealed. *See Cruz v. English Nanny & Governess School, Inc.*, 2017-Ohio-4176, 92 N.E.3d 143 (8th Dist.). Defendants appealed the trial court's decision denying their motions for directed verdict and judgment notwithstanding the verdict with respect to Cruz's claim for intentional inflection of emotional distress and Kaiser's claim for wrongful discharge. *Id*. at ¶ 1. Cruz appealed the trial court's decision granting defendants' motion for remittitur regarding her economic damages, and Cruz and Kaiser appealed the trial court's judgment regarding attorney fees. *Id*. at ¶ 2.

**{¶ 13}** The Eighth District overruled the EN&G defendants' assignments of error but found merit to Cruz's argument in her cross-appeal that the trial court erred when it granted defendants' motion for remittitur. *Id*. at ¶ 62, 83, 90. The

---

2. The trial court's determination was based on 40 percent (the contingency-fee amount) of $194,066.76 (plaintiffs' "net amount of compensatory and punitive damages"), which amounted to $77,626.70 plus $17,782.27 in litigation expenses to nonattorney third parties. We note, however, that the total amount is incorrect because those numbers add up to $95,408.97, not $95,308.97.

appellate court reversed the trial court's judgment and remanded for the trial court to reconsider the remittitur motion under the correct criteria. *Id*. at ¶ 90, 126.

{¶ 14} The Eighth District also concluded that the trial court abused its discretion when it calculated the reasonable amount of attorney fees, because the trial court had limited its review to attorney fees incurred by only one attorney even though the evidence showed that other members of the plaintiffs' litigation team also worked on the case. *Id*. at ¶ 105. The appellate court further held that the trial court erred when it "deviat[ed] from the lodestar amount based solely on the contingency fee agreement." *Id*. The court reversed the trial court's decision regarding attorney fees and instructed the trial court to reconsider Cruz's and Kaiser's motion for attorney fees. *Id*. at ¶ 126.

{¶ 15} On remand, Cruz and Kaiser moved to modify their motion for attorney fees, which included a request for "fees incurred in appellate litigation."[3] The EN&G defendants opposed Cruz and Kaiser's motion to modify attorney fees.

{¶ 16} The trial court denied the EN&G defendants' motion for remittitur and reinstated the jury's $75,000 award for Cruz's economic damages. The court also awarded Cruz and Kaiser $463,677.08 in attorney fees and expenses, which included attorney fees that they incurred for 480.4 hours of posttrial work from July 8, 2015, to September 14, 2017.

{¶ 17} The EN&G defendants appealed a second time, challenging the trial court's decision regarding remittitur and its calculation of attorney fees. 2020-Ohio-4216, at ¶ 1. The Eighth District affirmed the trial court's decision denying remittitur, *id*. at ¶ 25, but reversed in part and affirmed in part the trial court's award of attorney fees, *id.* at ¶ 35, 50, 58, 60. Relevant here, the Eighth District reversed

---

3. The dissenting opinion points out that "[n]owhere in the [Eighth District's] mandate was there a directive for the trial court to determine appellate-attorney fees." Dissenting opinion, ¶ 67. The court of appeals' mandate, however, did not prohibit Cruz and Kaiser from filing an updated motion regarding attorney fees that they had subsequently incurred defending their judgment on appeal.

the portion of the trial court's award of attorney fees for appellate work, concluding that "Ohio law does not permit recovery of appellate attorney fees except in cases involving remedial statutes," and that because "[p]laintiffs' claims were not based on any remedial statute," they were "not entitled to recovery of attorney fees generated in defending their judgment." *Id*. at ¶ 58.

{¶ 18} Cruz and Kaiser appealed to this court, and we accepted their sole proposition of law for review:

> Parties who are awarded their reasonable attorney-fees [sic] as part of a punitive damages award at trial may, in the presiding court's discretion, recover fees reasonably incurred over the entire course of the lawsuit, including at the appellate level.

*See* 161 Ohio St.3d 1420, 2021-Ohio-254, 161 N.E.3d 713.

## II. LAW AND ANALYSIS

### A. The Underpinnings of the Eighth District's Decision

{¶ 19} Cruz and Kaiser argue that the Eighth District erred when it relied on *Jay v. Massachusetts Cas. Ins. Co.*, 5th Dist. Stark No. 2009CA00056, 2009-Ohio-4519 and *LaFarciola v. Elbert*, 9th Dist. Lorain No. 08CA009471, 2009-Ohio-4615, in support of its holding that Ohio law does not permit recovery of attorney fees incurred at the appellate level except when a remedial statute so provides. Cruz and Kaiser contend that "[n]either the Eighth District below, nor the *Jay* or *LaFarciola* decisions on which it relied, offer a satisfying explanation" for prohibiting prevailing parties from recovering their appellate-attorney fees incurred defending a judgment that included a punitive-damages award.

{¶ 20} The plaintiffs in *Jay* and *LaFarciola* were awarded punitive damages and attorney fees at trial. *Jay* at ¶ 2; *LaFarciola* at ¶ 3. The defendants in both cases subsequently challenged various parts of the plaintiffs' awards in the trial

court or on appeal. *Jay* at ¶ 2; *LaFarciola* at ¶ 4. The plaintiffs subsequently sought attorney fees that they incurred successfully defending their judgments. *Jay* at ¶ 3; *LaFarciola* at ¶ 5. The trial courts denied the plaintiffs' motions, and Jay and LaFarciola appealed to the Fifth and Ninth District Courts of Appeals, respectively. *Jay* at ¶ 4; *LaFarciola* at ¶ 6-7.

{¶ 21} In both *Jay* and *LaFarciola*, the appellate courts relied on this court's decision in *Klein v. Moutz*, 118 Ohio St.3d 256, 2008-Ohio-2329, 888 N.E.2d 404, to conclude that appellate-attorney fees may be recovered only when there is a remedial statute permitting recovery of attorney fees. *Jay* at ¶ 11-13; *Lafarciola* at ¶ 11-13.

{¶ 22} In *Klein*, the plaintiffs (the Kleins) sued their landlord, alleging that he had failed to timely return their security deposit as required by R.C. 5321.16(B). *Klein* at ¶ 4. They sought statutory damages under R.C. 5321.16(C), which permits a tenant to "recover property and money due to him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorneys fees." The trial court awarded damages to the Kleins but denied their request for attorney fees. *Klein* at ¶ 4. The Kleins appealed. *Id.* The Ninth District Court of Appeals reversed the trial court's decision and instructed the trial court to award reasonable attorney fees to the Kleins. *Klein v. Moutz*, 9th Dist. Summit No. 23132, 2006-Ohio-4974, ¶ 11.

{¶ 23} On remand, "the trial court awarded the Kleins the attorney fees they had incurred at the trial level, but denied their fees associated with the appeal." *Klein*, 118 Ohio St.3d 256, 2008-Ohio-2329, 888 N.E.2d 404, at ¶ 5. The Kleins again appealed, and the Ninth District affirmed the trial court's decision denying attorney fees associated with the appeal. *Klein v. Moutz*, 9th Dist. Summit No. 23473, 2007-Ohio-3242. The Ninth District held that under R.C. 5321.16, the Kleins were entitled to costs that they incurred on appeal, including attorney fees, but the court concluded that only an appellate court could award such costs. *Id.* at

¶ 7-8.  The Ninth District explained, "App.R. 24 permits this Court to award 'fees allowed by law.'  App.R. 24, however, does not grant the trial court authority to award appellate costs in any manner."  *Id*. at ¶ 6.  The appellate court affirmed the trial court's decision, agreeing that the trial court "lacked authority under R.C. 5312.16 [sic] to award the costs of an appeal that occurred before this Court."  *Id*. at ¶ 8.

{¶ 24} The question presented to this court in *Klein*, 118 Ohio St.3d 256, 2008-Ohio-2329, 888 N.E.2d 404, was " '[w]hether a trial court has the authority to tax costs under R.C. 5321.16 which were incurred at the appellate level.' "  *Id*. at ¶ 2, quoting 115 Ohio St.3d 1419, 2007-Ohio-5056, 874 N.E.2d 537.  We answered the question in the affirmative and held that "[b]oth trial and appellate courts have authority to determine and tax costs under R.C. 5321.16(C) for attorney fees incurred at the appellate level."  *Id*. at syllabus.

{¶ 25} We explained in *Klein* that "R.C. 5321.16 is a remedial statute intended to compensate the tenant for a wrongfully withheld deposit at no expense to the tenant."  *Id*. at ¶ 13.  We noted that "[t]he trial court is in a better position to determine a fee award, for it may hold a hearing, take testimony, create a record, and otherwise evaluate the numerous factors associated with calculating an attorney-fee award."  *Id*.  We further stated that there was "no limiting language in the statute that preclude[d] a trial court from considering fees incurred at the appellate level."  *Id*.

{¶ 26} We noted in *Klein* that our decision was "consistent with judgments by appellate courts authorizing trial courts to assess attorney fees incurred on appeal to a prevailing plaintiff under other remedial statutes."  *Id*. at ¶ 15, citing *Tanner v. Tom Harrigan Chrysler Plymouth, Inc*., 82 Ohio App.3d 764, 613 N.E.2d 649 (2d Dist.1991) (Consumer Sales Practices Act, R.C. Chapter 1345), *Gibney v. Toledo Bd. of Edn*., 73 Ohio App.3d 99, 596 N.E.2d 591 (6th Dist.1991) (Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. 1988), and *Royster v. Toyota Motor*

*Sales, U.S.A., Inc.*, 92 Ohio St.3d 327, 332, 750 N.E.2d 531 (2001) (Ohio's Lemon Law, R.C. 1345.71 et seq.). And we stated that "[t]his practical approach furthers an important objective of the statute, i.e., to ensure that the tenant incurs no expense when seeking return of the deposit wrongfully withheld." *Id*. at ¶ 17. We concluded that a tenant may petition either the trial court or the court of appeals for "R.C. 5321.16(C) attorney fees that have been incurred on appeal." *Id*. at ¶ 13.

**{¶ 27}** The Fifth District decided *Jay*, 5th Dist. Stark No. 2009CA00056, 2009-Ohio-4519, about one week before the Ninth District decided *LaFarciola*, 9th Dist. Lorain No. 08CA009471, 2009-Ohio-4615.[4] Both appellate courts declined to hold that plaintiffs who were awarded punitive damages in their lawsuits could recover attorney fees that they incurred defending their judgments on appeal. *Jay* at ¶ 13; *LaFarciola* at ¶ 13-15. The Fifth and Ninth Districts concluded that this court's holding in *Klein*, 118 Ohio St.3d 256, 2008-Ohio-2329, 888 N.E.2d 404, was limited to plaintiffs' recovery of appellate-attorney fees in cases where there is a remedial statute permitting attorney fees. *Jay* at ¶ 15; *LaFarciola* at ¶ 11-12.

**{¶ 28}** The Fifth District found it imperative that "the cause of action in *Klein* was based on a remedial statute," which was not the case in *Jay*. *Jay* at ¶ 11. The Fifth District concluded, "A thorough reading of *Klein* reveals that the Supreme Court's decision to permit a trial court to determine appellate fees was meant to be read in harmony with *statutory provisions* that permit such an award; it was not meant to be liberally construed so as to apply to *any* determination of appellate fees and costs." (Emphasis sic.) *Id*.

**{¶ 29}** The Ninth District in *LaFarciola*, explicitly following *Jay*, explained that the plaintiffs in *LaFarciola* had argued that they were "entitled to appellate attorney fees in light of the jury verdict which awarded attorney fees pursuant to

4. *Jay* was decided by a visiting panel of three judges from the Ninth District that included two of the same judges who decided *LaFarciola*.

the award of punitive damages." *LaFarciola* at ¶ 13. But the court found "no controlling legal authority to support this proposition." *Id.* The court further explained, "[T]he 'American rule' does not permit a prevailing party to recover attorney fees in the absence of statutory authorization," *id.* at ¶ 14, citing *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.*, 46 Ohio St.2d 177, 179, 347 N.E.2d 527 (1976), and that "a move away from a deeply rooted policy regarding the awarding of attorney fees is best left as a matter of legislative concern," *id.*

{¶ 30} In this case, the Eighth District relied on *Jay* and *LaFarciola* to conclude that because Cruz's and Kaiser's claims were not based on a remedial statute, they were not entitled to recover attorney fees that they expended defending their judgments on appeal. 2020-Ohio-4216, at ¶ 58.

{¶ 31} Cruz and Kaiser maintain that the Eighth District erred when it relied on *Jay* and *LaFarciola*. They argue that although this court discussed Ohio's Landlord-Tenant Act, R.C. Chapter 5321, in *Klein*, 118 Ohio St.3d 256, 2008-Ohio-2329, 888 N.E.2d 404, as well as cases involving other remedial statutes, we did not explicitly limit recovery of appellate-attorney fees to cases in which a remedial statute was involved.

{¶ 32} The EN&G defendants argue that "[t]he entirety of this Court's rationale was based on the ***statutory*** language at issue in that case, namely [R.C.] 5321.16(C)." (Boldface and emphasis sic.) They quote the syllabus in *Klein*, asserting that it "distills the statutory basis of its decision in a single sentence: '[b]oth trial and appellate courts have authority to determine and tax costs ***under R.C. 5321.16(C)*** for attorney fees incurred at the appellate level.' " (Boldface, italics, and brackets sic.) The defendants further point to other sections of our decision in *Klein* in which we discuss R.C. 5321.16(C) or discuss the fact that the plaintiffs' appellate-attorney fees were authorized because the case was brought under a remedial statute. They argue that based on this court's emphasis on

remedial statutes, it is clear that the "decision extended only to cases involving *other* remedial statutes." (Boldface and italics sic.)

{¶ 33} The EN&G defendants, as well as the appellate courts in *Jay* and *LaFarciola* and the Eighth District in this case, have misinterpreted our decision in *Klein*. Notably, the issue in *Klein* was *not* whether appellate-attorney fees could be awarded *at all*; rather, the issue was whether the trial court could award appellate-attorney fees. *Klein* addressed appellate-attorney fees in relation to remedial statutes because there was a remedial statute at issue in that case. But there is nothing in our decision in *Klein* that limits recovery of appellate-attorney fees by a prevailing party to only those cases in which there is a remedial statute permitting recovery of attorney fees.

## B. The "American Rule" and the Punitive-Damages Exception

{¶ 34} Cruz and Kaiser contend that because the "American rule" already allows for an award of attorney fees when a jury finds that punitive damages are warranted, allowing attorney fees that are incurred defending a judgment on appeal would not create a new exception to the American rule. They also argue that allowing appellate-attorney fees following a punitive-damages award would further the punitive and deterrent purposes of awarding exemplary damages and more fully compensate prevailing parties who were injured by malicious conduct.

{¶ 35} "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp*., 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. "The American Rule has roots in our common law reaching back to at least the 18th century." *Baker Botts, L.L.P. v. ASARCO, L.L.C.*, 576 U.S. 121, 126, 135 S.Ct. 2158, 192 L.Ed.2d 208 (2015), citing *Arcambel v. Wiseman*, 3 U.S. 306, 1 L.Ed. 613 (1796). The rationale behind the American rule is that because "litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor

might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).

{¶ 36} However, there are three well-established exceptions to the American rule: (1) when a statute creates a duty to pay attorney fees, (2) when the losing party acted in bad faith, and (3) when the parties contracted to shift the fees. *Wilborn* at ¶ 7. It is the second exception that is relevant here. As we explained in *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, ¶ 9:

> An exception to the American rule allows an award of attorney fees to the prevailing party as an element of compensatory damages when the jury finds that punitive damages are warranted. *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 558, 644 N.E.2d 397 (1994); *New York, Chicago & St. Louis RR. Co. v. Grodek*, 127 Ohio St. 22, 24-25, 186 N.E. 733 (1933) ("facts which justify the infliction of exemplary damages will also justify the jury in adding the amount of counsel fees to the verdict, not as a part of exemplary damages, but as compensatory damages"). *See Galmish v. Cicchini*, 90 Ohio St.3d 22, 35, 734 N.E.2d 782 (2000).

{¶ 37} Since the earliest cases at common law, juries in Ohio have been permitted to include reasonable attorney fees as part of compensatory damages when the jury also awards exemplary or punitive damages. *Roberts v. Mason*, 10 Ohio St. 277 (1859), paragraph two of the syllabus. "[I]n cases where the act complained of is tainted by fraud, or involves an ingredient of malice, or insult, the jury, which has power to punish, has necessarily the right to include the

consideration of proper and reasonable counsel fees in their estimate of damages." *Id*. at 282, citing Sedgwick, *Measure of Damages*, 95-97, *Linsley v. Bushnell*, 15 Conn. 225 (1842), *Noyes v. Ward*, 19 Conn. 250 (1848), and *Marshall v. Betner*, 17 Ala. 832 (1850).

{¶ 38} At common law, recovery of reasonable attorney fees has always been permitted when punitive damages are awarded. *See Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178, 183, 327 N.E.2d 654 (1975), citing *Roberts*, 10 Ohio St. 277, *Peckham Iron Co. v. Harper*, 41 Ohio St. 100 (1884), and *Davis v. Tunison*, 168 Ohio St. 471, 155 N.E.2d 904 (1959). Moreover, there is nothing at common law prohibiting prevailing parties who were awarded punitive damages at trial from recovering reasonable attorney fees that they incurred defending their judgment on appeal. Therefore, based on the punitive-damages exception to the American rule, which was well established at common law, we hold that prevailing parties who were awarded reasonable attorney fees along with a punitive-damages award may also recover attorney fees that they incur in successfully defending their judgment on appeal. Accordingly, the Eighth District erred when it held that Cruz and Kaiser could not recover their appellate-attorney fees. Permitting prevailing parties to recover attorney fees that they incurred defending their judgment furthers the purpose of awarding attorney fees as an element of compensatory damages in cases warranting punitive damages.

{¶ 39} When a defendant is found liable for having acted in bad faith or for malicious tortious conduct and is ordered to pay attorney fees along with a punitive-damages award, the victims of that conduct should not always be required to bear the cost of successfully defending their judgment. To hold that prevailing parties who were awarded punitive damages may never receive attorney fees for defending their judgments would undermine the entire purpose of awarding compensatory attorney fees for victims of defendants' malicious or bad-faith conduct.

**{¶ 40}** Moreover, it is well established that prevailing parties may recover reasonable attorney fees that they incurred defending their judgment when the other two exceptions to the American rule are at issue, which are: (1) when a statute creates a duty to pay attorney fees, *Klein*, 118 Ohio St.3d 256, 2008-Ohio-2329, 888 N.E.2d 404, at syllabus, and (2) when the parties contracted to shift the fees, *Calypso Asset Mgt., L.L.C. v. 180 Indus., L.L.C.*, 10th Dist. Franklin Nos. 20AP-122 and 20AP-124, 2021-Ohio-1171, ¶ 4, 32 (defendants recovered their appellate-attorney fees pursuant to a fee-shifting provision in the parties' agreement that permitted the prevailing party to recover attorney fees). Therefore, not permitting prevailing parties who were awarded punitive damages to recover attorney fees that they incur in defending their judgment on appeal would go against established common-law exceptions to the American rule. And as this court stated in *Klein*, when a statute provides for an award of attorney fees to a prevailing plaintiff in addition to other available damages, the "practical approach" of permitting trial courts to determine the reasonable amount of attorney fees incurred at the appellate level "furthers [the] important objective" of ensuring that a plaintiff does not incur additional expenses when defending a judgment that lawfully awarded damages under the statute. *Id*. at ¶ 17. Similarly, allowing courts to determine the reasonable amount of attorney fees incurred at the appellate level when punitive damages were awarded also ensures that a prevailing party who was wronged by malicious conduct will not have to incur more expenses to defend his or her judgment on appeal.[5]

**{¶ 41}** The EN&G defendants contend that this court's holding in *Klein* was based on "centuries of precedent in Ohio and throughout the United States that it is the ***legislature***—and not the judiciary—that is best equipped to weigh the public

---

5. The dissenting opinion finds noteworthy the fact that the jury was not instructed that attorney fees could include fees incurred in any appeal of the judgment. Dissenting opinion at ¶ 60. But this is irrelevant. The jury also was not instructed that attorney fees were *limited* to those incurred at trial.

policy considerations inherent in creating exceptions to the well-established 'American Rule' that parties are responsible for their own attorney's fees." (Boldface and italics sic.) The EN&G defendants cite this court's decision in *Sorin*, 46 Ohio St.2d 177, 347 N.E.2d 527, in support of their argument, specifically pointing to the following statement: "We are well aware that the 'American rule' has been criticized in recent years, but, in our view any departure from such a deeply-rooted policy as the exclusion of attorney fees as costs is a matter of legislative concern." (Footnote omitted.) *Id*. at 179-180 (citing several law-review articles discussing the American rule).

{¶ 42} *Sorin*, however, is simply not relevant to the present case. First, *Sorin* had nothing to do with attorney fees incurred on appeal. Second, we concluded in *Sorin* that the plaintiff was not entitled to attorney fees because there was no exception to the American rule in that case, i.e., the statute at issue did not permit attorney fees, punitive damages were not awarded, and there was no fee-shifting contract. *Id*. at 183. Here, we have an exception to the American rule— Cruz and Kaiser received an award of punitive damages. Therefore, we are not departing from any policy—deeply-rooted or otherwise.

{¶ 43} The EN&G defendants also rely heavily on the United States Supreme Court's decision in *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), pointing out that it is "strikingly similar" to *Sorin*. But just as in *Sorin*, *Alyeska Pipeline* had absolutely nothing to do with the punitive-damages exception to the American rule. Rather, the court held that "it is not for us to invade the legislature's province by redistributing litigation costs" when there is no exception to the American rule. *Alyeska Pipeline* at 271. Again, in the present case, Cruz and Kaiser were awarded attorney fees pursuant to a well-established exception to the American rule, i.e., the malicious conduct of the defendants. Therefore, *Alyeska Pipeline* does nothing to further the EN&G defendants' position.

## C. R.C. 2315.21 and Caps on Punitive Damages

{¶ 44} The common-law right to exemplary or punitive damages in a tort action is now codified in R.C. 2315.21. The statute provides that punitive damages may not be recovered from a defendant unless the evidence shows that "[t]he actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate." R.C. 2315.21(C)(1). "[T]he burden of proof shall be upon a plaintiff in question, by clear and convincing evidence, to establish that the plaintiff is entitled to recover punitive or exemplary damages." R.C. 2315.21(D)(4).

{¶ 45} In 2005, the General Assembly enacted legislation to impose caps on punitive-damage awards in tort actions at two times the amount of the compensatory damages. R.C. 2315.21(D)(2)(a), Am.Sub.S.B. No. 80, 150 Ohio Laws, Part V, 7,915, 7,970-7,971.[6] When enacting punitive-damages caps, however, the legislature expressly carved out an exception for attorney fees: "Any attorney's fees awarded as a result of a claim for punitive or exemplary damages shall not be considered for purposes of determining the cap on punitive damages." R.C. 2315.21(D)(2)(c). The General Assembly specifically contemplated that attorney fees may be awarded above and beyond the caps when punitive damages are awarded. And notably, despite the dissenting opinion's statement to the contrary, dissenting opinion, ¶ 76-77, the statute's reference to attorney fees is *not* limited to only those fees incurred at trial. The caps on punitive damages will therefore not affect a prevailing party's award of appellate-attorney fees.

---

6. R.C. 2315.21(D)(2)(b) provides, "If the defendant is a small employer or individual, the court shall not enter judgment for punitive or exemplary damages in excess of the lesser of two times the amount of the compensatory damages awarded to the plaintiff from the defendant or ten per cent of the employer's or individual's net worth when the tort was committed up to a maximum of three hundred fifty thousand dollars."

**{¶ 46}** While discussing the amendments to R.C. 2315.21, the dissenting opinion notes that "[h]ad the General Assembly intended to authorize an award of attorney fees for appellate counsel when an award of punitive or exemplary damages is awarded, it would have said so, but it did not." Dissenting opinion at ¶ 77. That is not so. Attorney-fee awards have long been permitted at common law when punitive damages are awarded. When amending R.C. 2315.21, the General Assembly did not statutorily modify this rule (although it could have). In fact, the General Assembly explicitly stated that attorney-fee awards "*shall not* be considered" when determining caps on punitive damages (emphasis added), R.C. 2315.21(D)(2)(c), thus, preserving the common-law rule.

### D. Lodestar Calculation

**{¶ 47}** Permitting reasonable attorney fees to be awarded to prevailing parties for defending a judgment on appeal when punitive damages were awarded will also make the lodestar calculation more accurate. The lodestar is the " 'starting point for determining the amount of a reasonable fee,' " i.e., " 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' " *Bittner v. Tri-County Toyota, Inc*., 58 Ohio St.3d 143, 145, 569 N.E.2d 464 (1991), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In *Phoenix Lighting*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, we noted:

> It is simple economics that an attorney charges an hourly rate that takes into account the difficulty of the question involved, the opportunity cost, the time limitations imposed by the client, the skill requisite to perform a legal service, the attorney's professional relationship with the client, and the fee customarily charged in the jurisdiction for similar legal services.

*Id*. at ¶ 17, citing *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litigation*, 867 F.3d 791, 792 (7th Cir.2017). We also observed that in *Sears, Roebuck & Co.*, the Seventh Circuit Court of Appeals "reject[ed] lodestar enhancement based on the complexity of the case, the degree of success, and the public interest advanced by the litigation 'because novelty and complexity influence the base fee—the more novel and complex a case, the more hours will be billed and the higher the hourly billing rates will be.' " *Phoenix Lighting* at ¶ 17, quoting *Sears, Roebuck & Co*. at 792.

{¶ 48} Likewise, it is simple economics that permitting prevailing parties to recover reasonable attorney fees for defending their judgments more accurately reflects the number of hours that attorneys expend on a case, which will make the lodestar calculation more reasonable, fair, and correct.

{¶ 49} The dissenting opinion proclaims that "[i]n the past, any time this court has determined that appellate-attorney fees could be awarded, it has done so on the basis of the language of a statute." Dissenting opinion at ¶ 71, citing *Klein*, 118 Ohio St.3d 256, 2008-Ohio-2329, 888 N.E.2d 404 and *Royster*, 92 Ohio St.3d 327, 750 N.E.2d 531. But the dissent is mistaken. In *Klein* and *Royster*, this court allowed a prevailing party to recover reasonable appellate-attorney fees because a statute permitted an award of attorney fees—even though the statute did not expressly authorize recovery of *appellate*-attorney fees. *See Royster* at 332 (Ohio's Lemon Law, R.C. 1345.75, permits prevailing consumers to recover "reasonable attorney fees"); *Klein* at ¶ 13 (R.C. 5321.16(C) states that prevailing tenants may recover "reasonable attorney fees"). Similar to a prevailing party's recovering appellate-attorney fees when there is a statute permitting recovery of attorney fees (one exception to the American rule), prevailing parties may recover appellate-attorney fees when punitive damages are awarded (another exception to the American rule).

**{¶ 50}** Despite the dissent's exaggerated claims[7] that we have taken "a giant leap and forever change[d] the American rule," dissenting opinion at ¶ 79, we have done no such thing. The American rule *already permits* an award of attorney fees when punitive damages are awarded. The dissent just chooses to ignore this fact.

### III. CONCLUSION

**{¶ 51}** When parties are awarded punitive damages at trial, they may also recover reasonable attorney fees that they incur successfully defending their judgments on appeal. This rule is consistent with the punitive-damages exception to the American rule established at common law centuries ago, is not limited by statutory caps on punitive damages, and will make the lodestar calculation more accurate. Accordingly, we reverse the judgment of the Eighth District Court of Appeals with respect to the award of attorney fees for postverdict work and reinstate the trial court's judgment regarding the same.

Judgment reversed.

O'CONNOR, C.J., and FISCHER, DONNELLY, and BRUNNER, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by DEWINE, J.

_____

**KENNEDY, J., dissenting.**

**{¶ 52}** Today, the American rule, the "bedrock principle" of our adversarial system that each side in litigation is responsible for the cost of their own attorney fees, becomes clay. *See Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 252-253, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010), quoting *Ruckelshaus v. Sierra Club*,

_____

7. The dissent also declares that we have created some sort of windfall provision for prevailing plaintiffs by allowing an award of appellate-attorney fees, decrying that "[n]ow, in *every* case in which attorney fees are awarded at the trial-court level upon an award of punitive damages, an award of appellate-attorney fees will necessarily follow." (Emphasis sic.) Dissenting opinion at ¶ 79. But this cautionary tale completely discounts the fact that the court determines a fee-award amount for posttrial work, including appellate-attorney fees, based on the court's sound discretion in determining whether the requested amounts are warranted and appropriate. This means that the court could award a sum of zero.

463 U.S. 680, 684, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) (" 'Our basic point of reference' when considering the award of attorney's fees is the bedrock principle known as the ' "American Rule" ' "). Without a basis in law, the majority declares that in a civil case, an appellant may have taxed as costs the *appellee's* attorney fees if the appellant exerts his or her substantive right of first appeal to the court of appeals.

{¶ 53} The impact of this decision is easy to predict. It will have an immediate chilling effect on the right of first appeal guaranteed by the General Assembly for defendants against whom the most serious judgment in a civil case has been rendered—an award of punitive damages and attorney fees. Today's majority decision will also serve as a cautionary tale for others: when will another judicially created expansion occur, and will litigants see it coming?

{¶ 54} Because the majority reverses the appellate court's judgment denying appellants an award of appellate-attorney fees, I dissent.

### I. Constitutional rights and statutory authority

{¶ 55} An appellant's right to appeal a judgment against him or her is conferred by statute. Article IV, Section 3(B)(2) of the Ohio Constitution states that Ohio's courts of appeals "shall have such jurisdiction *as may be provided by law* to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." (Emphasis added.) The General Assembly has granted litigants the substantive right to appeal in civil cases in R.C. 2505.03(A), which provides:

> Every final order, judgment, or decree of a court and, when provided by law, the final order of any administrative officer, agency, board, department, tribunal, commission, or other instrumentality may be reviewed on appeal by a court of common

pleas, a court of appeals, or the supreme court, whichever has jurisdiction.

**{¶ 56}** The legislature, which confers a right of first appeal, specifically allows for the award of appellate-attorney fees in R.C. 2323.51. However, pursuant to R.C. 2323.51(B)(1), an award of appellate-attorney fees is limited to when the appellant engages in frivolous conduct in the prosecution of the appeal. R.C. 2323.51(A)(2)(a) identifies frivolous conduct as conduct that satisfies any of the following definitions:

(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

{¶ 57} R.C. 2323.51(B)(1) further provides that "[a]t any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, *reasonable attorney's fees*, and other reasonable expenses incurred *in connection with the civil action or appeal.*" (Emphasis added.) This is consistent with App.R. 23, which authorizes an award of appellate-attorney fees when a court of appeals determines that an appeal is frivolous.

{¶ 58} Here, plaintiffs-appellants, Christina Cruz and Heidi Kaiser, did not allege that defendants-appellees, English Nanny & Governess School, English Nannies, Inc., Sheilagh Roth, and Bradford Gaylord (collectively, the "Nanny School defendants") engaged in frivolous conduct during any of the appeals in this case. There was no appellate-attorney-fee award by the court of appeals pursuant to R.C. 2323.51. The General Assembly, which created the substantive right to appeal, has not authorized attorney fees as punishment for the legitimate appeal of a judgment but instead allows them only for the abuse of the right to appeal.

{¶ 59} Despite the substantive right that the General Assembly affords appellants and the limitation on an award of appellate-attorney fees, the majority holds that Cruz and Kaiser can obtain appellate-attorney fees. This is a gross, misguided expansion of the common-law American rule. Before examining the common law and the statutes that are implicated, it is useful to look at the relevant facts here.

## II. Facts

{¶ 60} At trial, the jury was instructed that after it reached its general verdict, it would decide at a subsequent hearing whether Cruz and Kaiser were entitled to punitive damages and attorney fees. The jury was told that if it determined that attorney fees should be awarded, the amount of the attorney fees would be determined at a separate hearing without the jury's participation. The jury interrogatory asked, "As a punishment to discourage others from committing

similar wrongful acts, should [the] defendant * * * be held liable for the reasonable attorney fees of counsel employed by [the plaintiff]?"  The jury was not instructed that attorney fees could include fees incurred in any appeal of the judgment.  The jury determined that trial-attorney fees should be awarded to Cruz and Kaiser in an unspecified amount.

{¶ 61} The Nanny School defendants appealed multiple issues concerning the merits of the case, and Cruz and Kaiser cross-appealed.  Cruz argued against the trial court's imposition of remittitur with respect to her economic damages, and both Cruz and Kaiser asserted that the amount of attorney fees awarded to them should not have been discounted based on what their attorneys would have been paid pursuant to their contingency-fee agreement.  *See Cruz v. English Nanny & Governess School Inc.*, 2017-Ohio-4176, 92 N.E.3d 143, ¶ 46, 84, 91 (8th Dist.).

{¶ 62} The Eighth District Court of Appeals affirmed the trial court's judgment on the assignments of error raised by the Nanny School defendants and sustained Cruz's assignment of error on the remittitur issue and Cruz and Kaiser's assignment of error regarding attorney fees.  *Id*. at ¶ 90, 106.  With respect to trial-attorney fees, the appellate court held that the trial court erred by basing its award on the amount that would have been generated under the contingency-fee agreement and by not crediting the work of other members of Cruz and Kaiser's lead attorney's firm.  *Id*. at ¶ 105.

{¶ 63} The Eighth District remanded the matter to the trial court for it to reconsider Cruz and Kaiser's motion for attorney fees, this time applying the two-part test from *Bittner v. Tri–County Toyota, Inc.*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991).  The court of appeals explained that "[w]hen determining the amount of attorney fees, a trial court is guided by a two-step determination.  The trial court first calculates the 'lodestar' by multiplying the number of hours reasonably expended by a reasonable hourly rate, and, second, decides whether to adjust that amount based on the reasonableness factors listed in Prof.Cond.R. 1.5(a)."  *Cruz* at

¶ 97, citing *Bittner* at syllabus. The court of appeals explained that "a contingency-fee agreement is one of many factors that a court should consider in determining the reasonableness of attorney fees—not the determining factor." *Id*. at ¶ 102.

{¶ 64} On remand from the court of appeals, Cruz and Kaiser filed a motion to modify the attorney-fee award, which also included a new request for the trial court to award appellate-attorney fees. Relying on *Turner v. Progressive Corp.*, 140 Ohio App.3d 112, 746 N.E.2d 702 (8th Dist.2000), the trial court granted the motion, concluding that "[p]laintiffs are entitled to attorney's fees for representation during the appellate process." The trial court then awarded roughly $128,000 in appellate-attorney fees, bringing the total attorney-fee award to over $421,000.

{¶ 65} Among other things, the Nanny School defendants appealed the award of appellate-attorney fees. The Eighth District reversed the trial court's judgment on that issue and held that the trial court erred when it awarded appellate-attorney fees. 2020-Ohio-4216, ¶ 58, 60. Cruz and Kaiser appealed the reversal of the appellate-attorney-fee award to this court.

{¶ 66} Before addressing the majority's decision, it is important to address a significant procedural defect in this case: on remand from the Eighth District, the trial court went beyond the mandate of the appellate court.

### III. The mandate of the appellate court

{¶ 67} R.C. 2505.39 provides that "[a] court that reverses or affirms a final order, judgment, or decree of a lower court upon appeal on questions of law, shall not issue execution, but shall send a special mandate to the lower court for execution or further proceedings." As set forth above, in *Cruz*, 2017-Ohio-4176, 92 N.E.3d 143, the appellate court held that the trial court erred in its award of trial-attorney fees by reducing the fee award based on the terms of the contingency-fee agreement. The Eighth District reversed the trial court's decision and indicated that it must comply with the *Bittner* test on remand. *Id*. at ¶ 97, 102, 126. Nowhere in

the court of appeals' mandate was there a directive for the trial court to determine appellate-attorney fees. Instead, the mandate from the Eighth District was for the trial court to *reconsider* the award of attorney fees it had *already made*. *Id*. at ¶ 126 ("on remand, the trial court is ordered to * * * reconsider plaintiff's motion for attorney fees"). The motion for attorney fees that the appellate court referred to did not contain a request for appellate-attorney fees. And "[a]bsent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Nolan v. Nolan*, 11 Ohio St.3d 1, 462 N.E.2d 410 (1984), syllabus.

**{¶ 68}** Moreover, the trial court's reliance on *Turner*, 140 Ohio App.3d 112, 746 N.E.2d 702, in support of its conclusion that Cruz and Kaiser were entitled to appellate-attorney fees was misguided. In *Turner*, the court of appeals noted that appellate-attorney fees were available pursuant to a statute, the Fair Labor Standards Act, 29 U.S.C. 201 et seq., and the appellate court specifically ordered the trial court to award appellate-attorney fees. *Turner* at 118. Here, there is no statute authorizing the award of appellate-attorney fees, and there was no mandate from the appellate court to award them. The mandate from the court of appeals was specific. It ordered the trial court to *reconsider* the amount of trial-attorney fees because the trial court had failed to properly calculate them. *Cruz* at ¶ 126. That is all.

**{¶ 69}** The trial court lacked any authority—statutory, common-law, or by order of a superior court—to award appellate-attorney fees. In my view, the trial court's improper exercise of its jurisdiction on remand is by itself sufficient reason to affirm the Eighth District's judgment reversing the trial court's award of appellate-attorney fees. But because the majority reverses the appellate court's judgment by expanding the common law, I address the decision of the majority, starting with consideration of the American rule.

### IV. The common law—the American rule

{¶ 70} There is no common-law right for Cruz and Kaiser to be awarded appellate-attorney fees in this case. "[T]he general 'American rule' does not permit the prevailing party to recover attorney fees, in the absence of statutory authorization, as part of the costs of litigation." *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.*, 46 Ohio St.2d 177, 179, 347 N.E.2d 527 (1976). "The rationale behind the creation and perpetuation of the aforesaid rule is that '[t]he *subject of costs is one entirely of statutory allowance and control*.' " (Emphasis added and brackets sic.) *Id.*, quoting *State ex rel. Michaels v. Morse*, 165 Ohio St. 599, 607, 138 N.E.2d 660 (1956).

{¶ 71} In the past, any time this court has determined that appellate-attorney fees could be awarded, it has done so on the basis of the language of a statute. *See Klein v. Moutz*, 118 Ohio St.3d 256, 2008-Ohio-2329, 888 N.E.2d 404; *Royster v. Toyota Motor Sales, U.S.A., Inc.*, 92 Ohio St.3d 327, 750 N.E.2d 531 (2001). The question in those cases was whether the *statute* at issue that allowed attorney fees also permitted an award of appellate-attorney fees. In each case, this court determined that the relevant statute did allow appellate-attorney fees as well as trial-attorney fees. *See Klein* at ¶ 18 (applying R.C. 5321.16(C)); *Royster* at 332 (applying R.C. 1345.71 et seq.). Here, there is no attorney-fees-granting statute for this court to construe. There is, however, a judicially created exception to the American rule that is relevant in this case.

{¶ 72} "[I]n cases where the act complained of is tainted by fraud, or involves an ingredient of malice, or insult, *the jury*, which has power to punish, has necessarily the right *to include the consideration of proper and reasonable counsel fees in their estimate of damages*." (Emphasis added.) *Roberts v. Mason*, 10 Ohio St. 277, 282 (1859). This exception, which permits the award of attorney fees incurred at trial, has evolved into the current exception that applies to cases in which punitive damages are awarded: "An exception to the American rule allows an award

27

of attorney fees to the prevailing party as an element of compensatory damages when the jury finds that punitive damages are warranted." *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, ¶ 9.

**{¶ 73}** But the exception is limited. The consideration of attorney fees as a result of an award of punitive damages is a determination made at trial and cannot include the consideration of appellate-attorney fees, because those fees are an unknown.

**{¶ 74}** In R.C. 2315.21, the General Assembly has recognized this limited exception for the award of trial-related attorney fees.

## V. R.C. 2315.21

**{¶ 75}** R.C. 2315.21 is part of a statutory scheme in R.C. Chapter 2315 that covers trial procedure. R.C. 2315.21 was amended in Senate Bill 80 by the 125th General Assembly in a statutory package commonly known as "tort reform." *See* Am.Sub.S.B. No. 80, 150 Ohio Laws, Part V, 7915, 7969.

**{¶ 76}** The statute establishes when punitive or exemplary damages may be awarded, R.C. 2315.21(C), and places caps on the award of punitive and exemplary damages, R.C. 2315.21(D)(2)(a) and (b). The language of the statute does not expressly authorize an award of attorney fees when punitive or exemplary damages are awarded; rather, in detailing the extent of the caps, it merely recognizes the common-law principle that an award of trial-attorney fees may be granted as a result of a claim for punitive or exemplary damages. R.C. 2315.21(D)(2)(c).

**{¶ 77}** Had the General Assembly intended to authorize an award of attorney fees for appellate counsel when an award of punitive or exemplary damages is awarded, it would have said so, but it did not. "The courts will presume that the legislative branch of government knows the existing condition of the law, whether common law or statute law[,] and that the legislative branch does not intend to change the pre-existing law unless the Legislature clearly shows an

28

intention to do so." (Internal citations omitted.) *Wachendorf v. Shaver*, 149 Ohio St. 231, 248, 78 N.E.2d 370 (1948) (Hart, J., dissenting). The General Assembly knows how to authorize the award of appellate-attorney fees when it wants to, and it has done so in other statutes.

{¶ 78} For instance, under R.C. 3105.73(A), "[i]n an action for divorce, dissolution, legal separation, or annulment of marriage *or an appeal of that action*, a court may award all or part of reasonable attorney's fees and litigation expenses to either party." (Emphasis added.) And appellate-attorney fees can be awarded under certain circumstances pursuant to R.C. 2335.39, a statute that allows for compensation to eligible parties in civil actions or appeals involving the state. And as set forth above, this court has interpreted other statutes as permitting an award of appellate-attorney fees.

{¶ 79} Despite the procedural posture of this case and the lack of any statutory authority, the majority takes a giant leap and forever changes the American rule that each party to litigation pays their own attorney fees. Now, in *every* case in which attorney fees are awarded at the trial-court level upon an award of punitive damages, an award of appellate-attorney fees will necessarily follow. And it is easy to predict the outcome—a chilling effect on a litigant's substantive right of first appeal.

## VI. Chilling effect of today's majority decision

{¶ 80} The major shift undertaken by the majority today lies within the province of the legislature, not this court. As stated above, "the rationale behind the creation and perpetuation of the [American rule] is that '[t]he subject of costs is one entirely of statutory allowance and control.' " (Second brackets sic.) *Sorin*, 46 Ohio St.2d at 179, 347 N.E.2d 527, quoting *Michaels*, 165 Ohio St. at 607, 138 N.E.2d 660. Therefore, "a move away from a deeply rooted policy regarding the awarding of attorney fees is best left as a matter of legislative concern." *LaFarciola v. Elbert*, 9th Dist. Lorain No. 08CA009471, 2009-Ohio-4615, ¶ 14, citing *Sorin* at

179-180. And the chilling effect the majority's decision will have on litigants' right of first appeal guaranteed by Ohio law is unmistakable.

{¶ 81} The General Assembly, empowered by the Ohio Constitution, has afforded every litigant a right of first appeal. And the legislature has limited an award of appellate-attorney fees to situations involving frivolous conduct and some other narrowly defined kinds of cases. The majority's decision today not only impinges on an appellant's right of first appeal by authorizing a judicially created sanction against the appellant in the form of appellate-attorney fees but, perhaps unwittingly, also punishes certain litigants for filing discretionary appeals to this court. Taken to its logical conclusion, the majority's reasoning would permit an award of appellate-attorney fees incurred in this appeal. In fact, at oral argument, Cruz and Kaiser's counsel related an intention to pursue attorney fees for their appeal to this court.

{¶ 82} This case has been appealed to the court of appeals twice. Cruz's and Kaiser's own cross-appeals kept this case alive after the Nanny School defendants' first appeal, and following Cruz and Kaiser's defeat in the court of appeals in the second appeal, they appealed here. We determined that this case was one of great general interest and accepted jurisdiction because we thought it was an important case for our state, *see* Ohio Constitution, Article IV, Section 2(B)(2)(e). But is the majority really going to hold the Nanny School defendants responsible for the appellate-attorney fees here so that the majority can change Ohio law? On remand, the trial court will have no reason to believe otherwise.

{¶ 83} The majority places no limits on its holding. Therefore, the Nanny School defendants have significant exposure to incurring even greater costs. They will be paying appellate-attorney fees for arguments made by Cruz and Kaiser about appellate-attorney fees that were *not awarded* below. Obviously, there is little motivation for Cruz and Kaiser or any other party who sits in their position to do anything more than continually appeal if someone else is paying the bill.

**{¶ 84}** The result is a harsh dichotomy: a defendant who has a substantive right of first appeal that is chilled by the prospect of paying appellate-attorney fees for both sides and a plaintiff who can generate larger and larger awards with each appeal. This enlargement of the awarding of attorney fees to encompass the basic right of first appeal with nothing more than a punitive-damage award will certainly have a chilling effect. This is an affront to the American rule.

### VII. The majority's comments about this dissent

**{¶ 85}** The majority takes aim at this dissent in several places in its opinion. I address those criticisms here.

### A. Limited remand

**{¶ 86}** In response to this dissent's recognition of the limited nature of the remand from the court of appeals, *see Cruz*, 2017-Ohio-4176, 92 N.E.3d 143, at ¶ 126, the majority states that "[t]he court of appeals' mandate * * * did not prohibit Cruz and Kaiser from filing an updated motion regarding attorney fees that they had subsequently incurred defending their judgment on appeal," majority opinion, ¶ 15, fn. 3. But the majority confuses the role of the appellate court and the appellate court's remand power. The role of an appellate court is to review the trial-court proceedings and the trial court's decisions and determine whether any error occurred. *See* App.R. 12(A)(1). Appellate courts are bound by standards of review when undertaking that review, and when an assignment of error raises a question of law, the appellate court reviews it de novo. *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, 103 N.E.3d 804, ¶ 23.

**{¶ 87}** The relevant question before the appellate court in this case was whether the trial court erred in calculating trial-attorney fees. The appellate court concluded that the trial court had improperly "deviat[ed] from the lodestar amount" when determining trial-court attorney fees. *Cruz* at ¶ 105. The appellate court stated the proper legal standard, *id*. at ¶ 97, 102, and remanded the matter to the

trial court for it to apply the correct legal standard to determine an award of trial-attorney fees, *id*. at ¶ 126. The majority's statement that the appellate court did not tell the parties what they could *not* do stands the traditional role of the appellate court in the American justice system on its head.

{¶ 88} Appellate courts do not list for the parties what they *may not* do on remand. Such an admonition could be limitless and therefore impossible to achieve, reaching beyond mere review of what occurred below and thereby blurring the line between neutral and detached judicial review and advocacy. Appellate courts tell trial courts what the law is and what the trial court *must* do on remand. Here, the trial court exceeded that mandate. "A trial court may not vary the mandate of an appellate court, but is bound by that mandate on the questions of law decided by the reviewing court." *Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320, 323, 649 N.E.2d 1229 (1995).

*B. The General Assembly's preservation of the common-law rule*

{¶ 89} The majority opinion actually supports this dissent's point that the General Assembly failed to broaden the availability of attorney fees to include appellate-attorney fees when it recognized the availability of an award of attorney fees when a jury finds that punitive damages are warranted, *see* R.C. 2315.21(D)(2)(c). The majority is correct when it says that the legislature "preserv[ed] the common-law rule." That is precisely the point: the General Assembly *did not expand* the common-law rule and extend the potential award of attorney fees to include appellate-attorney fees.

*C. The majority creates a new common-law right*

{¶ 90} When discussing this dissent's citations to *Klein*, 118 Ohio St.3d 256, 2008-Ohio-2329, 888 N.E.2d 404, and *Royster*, 92 Ohio St.3d 327, 750 N.E.2d 531, the majority inadvertently bolsters the dissent. The majority declares that this dissent is mistaken when this dissent says that " '[i]n the past, any time this court has determined that appellate-attorney fees could be awarded, it has done so on the

basis of the language of a statute.' " (Brackets added in majority opinion.) Majority opinion at ¶ 49, quoting dissenting opinion at ¶ 71. Yet the majority goes on to admit that in *Klein* and *Royster*—the only cases in which this court has allowed appellate-attorney fees—"this court allowed a prevailing party to recover reasonable appellate-attorney fees because a statute permitted an award of attorney fees—even though the statute did not expressly authorize recovery of *appellate*-attorney fees." (Emphasis sic.) Majority opinion at ¶ 49. But that is the very point that this dissent is making here: in *Klein* and *Royster*, this court was *interpreting the text of a statute* when it determined that appellate-attorney fees were available in those cases. In *Klein*, this court pointed out that the statute at issue was "a remedial statute intended to compensate the tenant for a wrongfully withheld deposit at no expense to the tenant." *Klein* at ¶ 13. In *Royster*, this court determined that the plaintiff-appellant was eligible for recovery under Ohio's Lemon Law statutory scheme, which included an entitlement to attorney fees, *see* R.C. 1345.75(A). *Royster* at 332.

{¶ 91} Today, *for the first time*, however, this court is not basing an award of appellate-attorney fees on the interpretation and application of a statute. The majority is basing this award on its own expansion of the common law. The majority ignores the fact that this court has never exercised that power in the century and a half that it has recognized the availability of attorney fees in cases in which an award of punitive damages has been granted. The majority says that this dissent "just chooses to ignore [the] fact" that the American rule "already permits an award of attorney fees when punitive damages are awarded." (Emphasis deleted.) Majority opinion at ¶ 50. But that statement is simply untrue. This dissent acknowledges not only the common-law history of the availability of attorney fees in cases involving punitive damages, but also the General Assembly's recognition of that common-law principle in the statutory provision establishing that punitive-damage caps do not include an award of trial-attorney fees, R.C. 2315.21(D)(2)(c).

What the majority chooses to ignore is the fact that this court has never expanded the American rule under the common law to include an award of stacked appellate-attorney fees in cases in which punitive damages have been awarded—until now.

### VIII.  Conclusion

**{¶ 92}** "It has long been established in Ohio that an award of attorney fees must be predicated on statutory authorization or upon a finding of conduct which amounts to bad faith."  *Vance v. Roedersheimer*, 64 Ohio St.3d 552, 556, 597 N.E.2d 153 (1992).  The awarding of appellate-attorney fees to the victorious party is contrary to the American rule, which is at the center of our adversarial system. Because there is no statute that authorizes the appellate-attorney fees requested here, I would affirm the judgment of the Eighth District Court of Appeals. Therefore, I dissent.

DeWine, J., concurs in the foregoing opinion.

————————————

The Pattakos Law Firm, L.L.C., Peter Pattakos, and Rachel Hazelet, for appellants.

Mark A. Novak; and Dinn, Hochman & Potter, L.L.C., and Edgar H. Boles, for appellees.

Paul W. Flowers Co., L.P.A., Louis E. Grube, and Paul W. Flowers, urging reversal for amicus curiae Ohio Association for Justice.

The Mellino Law Firm, L.L.C., and Calder Mellino, urging reversal for amicus curiae Cleveland Academy of Trial Attorneys.

Law Offices of John C. Camillus, L.L.C., and John C. Camillus, urging reversal for amicus curiae Ohio Employment Lawyers' Association.

————————————