[Cite as *Oxford Campus I., L.L.C. v. Michael*, 2024-Ohio-5614.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Oxford Campus I, LLC, | : | |
| Plaintiff-Appellee, | : | No. 24AP-36 |
| | | (C.P.C. No. 21CV-6498) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Fadi Michael, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 27, 2024

**On brief:** *Kemp, Schaeffer & Rowe, Co., L.P.A., Scott N. Schaeffer*, and *Daniel A. Yarmesch*, for appellee. **Argued:** *Daniel A. Yarmesch.*

**On brief:** *The Law Office of Josh Brown LLC*, and *Joshua J. Brown*, for appellant. **Argued:** *Joshua J. Brown.*

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Defendant-appellant, Fadi Michael, appeals the decision of the Franklin County Court of Common Pleas granting summary judgment and awarding damages and attorney's fees in favor of plaintiff-appellee, Oxford Campus I, LLC ("Oxford"). For the following reasons, we affirm the trial court's judgment on the merits of the breach of lease action and associated damages, and reverse and remand the trial court's judgment awarding attorney's fees.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Oxford owns a 1,350 square foot commercial property located in Columbus, Ohio near The Ohio State University campus. Michael entered into a lease with Oxford in May 2009 and extended the term of the lease until May 31, 2021. During that time, Michael

operated a bar on the premises. The parties agree that after May 31, 2021, the lease continued on a "month-to-month" basis with rent set at $1,000 per month. (Compl. at ¶ 6-7, First Am. Answer at ¶ 6-7.) On June 18, 2021, Oxford sent Michael written notice terminating the lease, and Michael vacated the premises on or about August 10, 2021.

{¶ 3} On October 13, 2021, Oxford filed a complaint against Michael alleging he breached the lease by failing to pay $2,000 in rent and various utility bills for July and August 2021, failing to leave the premises in a "broom swept" condition, defacing and damaging the property in various ways, and removing signage and doors. (Compl. at 2.) As a result of the alleged breaches, Oxford claimed Michael caused $28,930 in damages consisting of $2,000 in unpaid rent and $26,930 for cost of repairs and clean up. Oxford stated it applied Michael's $1,000 security deposit to partially offset those damages, leaving $27,930 plus interest, attorney's fees, and court costs.

{¶ 4} On October 19, 2021, Michael filed an answer along with counterclaims for breach of contract and conversion pertaining to Oxford's use of the security deposit. After Oxford moved to dismiss the conversion claim, Michael filed a notice of voluntary dismissal of that claim without prejudice and amended his answer.

{¶ 5} Oxford moved for summary judgment on December 13, 2021, arguing it was entitled to judgment in its favor as a matter of law as to the damages it sustained from Michael's breach of the lease obligations for rent, utilities, repairs and maintenance, alterations, and termination. Oxford further argued summary judgment on Michael's counterclaim was warranted in its favor under the lease default provision. Oxford provided the following attachments to support summary judgment: the affidavit of Oxford's manager, Scott Solomon; the original lease and extensions; documentation of utility costs; a contractor's invoice for trash removal and haul-away of various items; a painter's invoice for sanding graffiti off of the wood walls and trim, dry wall repairs, skim coating the dry wall to address "carvings," priming the walls and ceiling to cover graffiti, and application of two coats of paint; an invoice to replace a sign; an invoice to replace two metal doors; an invoice to build and install two gates; and an invoice for replacing windows. (Dec. 13, 2021 Mot. for Summ. Jgmt., Ex. A-4.)

{¶ 6} Michael filed a memorandum in opposition to summary judgment on December 26, 2021. Within it, Michael provided a partial confession on judgment

admitting to owing two month's rent and payment of certain utilities for July and August 2021; he did not admit to the amount he owed and requested a hearing to establish damages.  Michael further asserted that several issues of material fact remain to prevent summary judgment, including whether: (1) the alleged damage constituted "normal wear and tear" on the facts of this case and "especially given * * * the area, and the nature of the establishment"; (2) Michael caused the damage to the property; (3) Michael is entitled to return of his deposit; (4) Michael owns the doors and sign; (5) Oxford failed to mitigate damages by failing to maintain the property; (6) Oxford acted in good faith in "changing the normal operation of the lease and forcing [him] out on a short time frame"; (7) any alleged damages are "de minimus"; (8) any of the damage, such as the "graffiti and etchings" had a business purpose; (9) and Michael's actions were not "abnormal" considering the "low-rent commercial" nature of the property.  (Memo. in Opp. at 4, 6-7.) Michael attached his own affidavit to support his memorandum in opposition to summary judgment.

{¶ 7}   The trial court issued a decision and judgment in Oxford's favor on July 12, 2023.  At the outset, the trial court determined that Oxford performed under the lease and that Michael admitted he owes Oxford rent and utilities for two months. The trial court further determined that Michael breached Article XXIII, Termination, by failing to remove all of his property, remove trash, and leave the premises in a broom swept condition, and breached Article VI, Repairs and Maintenance, by failing to maintain, in good condition with reasonable wear and tear excepted, the plate glass, glass doors, exterior windows and doors, and by failing to generally keep the premises in "good order and report any damage" to Oxford.  (July 12, 2023 Decision at 7, citing Mot. for Summ. Jgmt., Ex. A-1 at 6.2.)

{¶ 8}   In making this determination, the trial court found each of Michael's arguments that summary judgment should be precluded lacked merit.  Specifically, the trial court found no issue of material fact concerning reasonable wear and tear of the property considering the nature of the damage Oxford documented in comparison to the obligation in the lease for Michael to keep the property in good condition.  The trial court found Michael's argument about who caused the damage to the walls and windows irrelevant since he was responsible for the condition of the premises under the terms of the lease.  The trial court also found no question of material fact existed concerning Oxford applying the

security deposit as an offset since Michael admitted he owed rent and utility bills and did not present any evidence to refute the amounts provided by Oxford.

{¶ 9}   Concerning the doors and the sign, the trial court determined that an issue of material fact did not arise as to whether Michael can be liable for removing doors and the sign under Article VII, Alterations and Article XX, Signage.  The trial court reasoned that doors are not "trade fixtures" or equipment under the lease terms and the applicable lease provision expressly states alterations, changes, additions, or improvements made to the premises belong to Oxford.  (July 12, 2023 Decision at 11.)  Furthermore, "[w]hile a sign may be a trade fixture, assuming [Michael] owned the sign, he would still be liable for any damage to the property resulting in its removal under the Lease" and he "provided no evidence that he obtained [Oxford]'s written approval to install a sign."  (July 12, 2023 Decision at 11.)

{¶ 10} The trial court then found no genuine issue of material fact remained as to whether Oxford mitigated its damages by failing to conduct regular maintenance since Michael accepted responsibility for the maintenance and repairs at issue.  As to Michael's argument concerning Oxford acting without good faith, the trial court determined Michael did not raise an issue of material fact since the parties undisputedly entered into a month-to-month lease and the length of his prior tenancy is irrelevant to whether he was entitled to deface walls, remove doors, and break windows.  The trial court likewise found no merit to Michael's "de minimis," "business purpose," and "industry standards, course of dealing" arguments since those concepts neither modify Michael's duties under the lease nor have evidentiary support.  (July 12, 2023 Decision at 13.)

{¶ 11} Because no genuine issue of material fact remained, the trial court concluded Oxford was entitled to summary judgment on its claim for breach of lease and Michael's counterclaim as a matter of law.  Accordingly, the trial court granted Oxford's motion for summary judgment, granted Oxford judgment in the amount of $29,043.23 plus interest, reasonable attorney's fees, and court costs, and dismissed Michael's counterclaim with prejudice.

{¶ 12} Michael attempted to appeal that decision on August 11, 2023, but then voluntarily dismissed the appeal on September 28, 2023.  On December 18, 2023, the

parties filed a stipulation in the trial court as to the amount of award of attorney's fees.  The stipulation states:

> Now come [Oxford] and [Michael] ("the Parties") and submit this Stipulation as to the amount of the award of attorney's fees pursuant to the Court's July 12, 2023 Decision and Entry.  The Parties stipulate to the amount of $13,000.00 for attorney's fees as reasonable. This Stipulation is directed solely to the amount and reasonableness of the attorney's fees awarded to [Oxford].

(Dec. 18, 2023 Stipulation at 1.)

{¶ 13} Two days later, on December 20, 2023, the trial court issued a judgment entry awarding Oxford attorney fees.  The entry states, "[f]or good cause shown, and based upon the Stipulation of the Parties, the Court * * * grants [Oxford] an award of its attorney's fees in the amount of $13,000.00 against [Michael]," specifies that the grant of attorney's fees "incorporates the reasoning, findings, and holdings set forth in its July 12, 2023, Decision and Entry," and found "that an award of $13,000.00 in attorney's fees is reasonable under the circumstances of this case."  (Dec. 20, 2023 Jgmt. Entry Awarding Attorney's Fees at 1.)  Michael filed the instant notice of appeal on January 12, 2024.

## II.  ASSIGNMENTS OF ERROR

{¶ 14} Michael assigns the following as trial court errors:

> 1. The Trial Court errored as a matter of law, because, in ruling on a motion for summary judgment, it neither declined to rule on genuine issues of material fact, nor in the alternative, construed the facts in the light most favorable to the non-movant, and it must do one of the two.
>
> 2. The Trial Court Errored as a matter of law when it found that Michael breached a duty to surrender in repair, saying, "no definition of reasonable wear and tear would include this type of damage."
>
> 3. The Trial Court errored as a matter of law when it found that Michael could not remove his own property from the Premises.
>
> 4. The Trial Court errored as a matter of law in its calculation of damages.

5. The Trial Court errored as a matter of law in awarding attorney's fees.

(Sic passim.)

## III. STANDARD OF REVIEW

{¶ 15} "Pursuant to Civ.R. 56(C), summary judgment is appropriate only when it is clear '(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.' " *State ex rel. Whittaker v. Lucas Cty. Prosecutor's Office*, 164 Ohio St.3d 151, 2021-Ohio-1241, ¶ 8, quoting *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66 (1978); *accord* Civ.R. 56(C). "The moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory allegations that the nonmoving party has no evidence to prove its case." *Bremar v. Ohio Univ.*, 10th Dist. No. 20AP-513, 2022-Ohio-1382, ¶ 13, citing *Nalluri v. Jones*, 10th Dist. No. 19AP-779, 2020-Ohio-4280, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Rather, the moving party must point to some evidence that affirmatively demonstrates the nonmoving party has no evidence to support each element of the stated claims. *Nalluri* at ¶ 13. " '[I]f the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' " *Id.*, quoting *Dresher* at 293.

{¶ 16} An appellate court reviews the decision granting or denying a party's motion for summary judgment using a de novo standard of review. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015. This standard requires us to independently review the record and afford no deference to the trial court. *Hill v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 20AP-88, 2021-Ohio-561, ¶ 14.

## IV. LEGAL ANALYSIS

{¶ 17} As explained in detail below, Oxford is entitled to judgment as a matter of law on the breach of lease claims: Michael does not dispute the conduct or conditions at issue that violated the clear terms of the lease and failed to present Civ.R. 56 evidence to meet his

reciprocal burden to establish a genuine issue of material fact remains for trial. Furthermore, the trial court did not err in awarding Oxford the money damages it sought since Oxford demonstrated its entitlement to damages in an amount ascertainable with reasonable certainty, Michael did not present evidence to oppose those amounts, and Michael's arguments contesting damages lack merit. However, because a genuine issue of material fact remains as to whether an act of default occurred under Section 17.1 of the lease to permit the award of Section 17.2 attorney's fees, we remand that issue to the trial court to conduct further proceedings.

### A. First Assignment of Error

{¶ 18} In his first assignment of error, Michael contends that the trial court neither "declined to rule on genuine issues of material fact" nor construed the facts in the light most favorable to Michael. (Appellant's Brief at 11.) We disagree.

{¶ 19} As previously set forth in the standard of review, in evaluating a motion for summary judgment, the trial court must construe the evidence most strongly in favor of the adverse party and only grant the motion where no genuine issue exists as to any material fact. Civ.R. 56(C). The Supreme Court of Ohio recently explained the trial court's duty in this regard in *Smathers v. Glass*, 172 Ohio St.3d 84, 2022-Ohio-4595:

> [D]etermining whether issues of disputed fact exist is different from making findings of facts. While it is true that trial courts are generally in the best position to determine the weight of evidence and the credibility of witnesses when acting as a trier of fact, *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), on a summary-judgment motion, any inferences regarding the evidence, including the resolution of ambiguities or inconsistencies, must be made in a manner that favors the nonmoving party, Civ.R. 56(C). *See Wills v. Frank Hoover Supply*, 26 Ohio St.3d 186, 188, 26 Ohio B. 160, 497 N.E.2d 1118 (1986) ("In reviewing a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the opposing party[.]"), citing Civ. R. 56(C). Because the movants sought to resolve this case on summary judgment, the evidence in this case could not be weighed, only reviewed by the trial court and by the court of appeals de novo. When factual ambiguities exist, inferences must still be resolved in favor of the nonmoving party.

*Id.* at ¶ 32.

{¶ 20} In this case, Michael contends the trial court generally erred in employing the summary judgment standard: the trial court "resolved fact disputes *sua sponte*" considering "nothing more than written affidavits from both parties" that were "contradictory on material matters" and "completely and totally adopted [Oxford's] version of the facts, wholesale." (Appellant's Brief at 14.)

{¶ 21} Contrary to Michael's position, the trial court adhered to the Civ.R. 56 review requirements. In our assessment, the trial court first determined Oxford met its initial burden by pointing to undisputed facts and the lease provisions Oxford believed those facts violated. The trial court then concluded that Michael's attempt to create a genuine issue of material fact failed by relying on arguments or facts that are irrelevant considering the applicable lease provisions in this case. We find no indication the trial court erred, globally, in assessing the summary judgment evidence in this regard.

{¶ 22} Moreover, Michael has not identified within this assignment of error the specific issues or alleged factual disputes that he believes the trial court viewed improperly. We decline to guess which material facts Michael believes are contested and will not otherwise create arguments on his behalf. *See State ex rel. Petro v. Gold*, 10th Dist. No. 04AP-863, 2006-Ohio-943, ¶ 94 (explaining, "[T]he burden of affirmatively demonstrating error on appeal rests with the party asserting error" and it's "not appropriate for [an appellate] court to construct the legal arguments in support of an appellant's appeal."); App.R. 9 and 16(A)(7). We note that Michael does present specific arguments challenging the trial court's summary judgment determinations in assignments of error two and three, and we will address those arguments at that time. However, under this assignment of error, Michael has not demonstrated the trial court erred in assessing the facts pursuant to the Civ.R. 56 standard. Accordingly, Michael's first assignment of error is overruled.

## B. Second Assignment of Error

{¶ 23} In his second assignment of error, Michael contends that the trial court erred in finding Michael breached a duty to "surrender in repair" after determining, "no definition of reasonable wear and tear would include this type of damage." (Appellant's Brief at 15.) This assignment of error challenges an aspect of the trial court's determination that Michael breached the lease. "Leases are contracts" and are subject to traditional

contract rules. *Atelier Dist., L.L.C. v. Parking Co. of Am., Inc.*, 10th Dist. No. 07AP-87, 2007-Ohio-7138, ¶ 16. To prove a claim for breach of a lease agreement, "a plaintiff must demonstrate (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages or loss to the plaintiff." *WBL SPE II, L.L.C. v. Acme Ents., Inc.*, 10th Dist. No. 18AP-597, 2020-Ohio-1394, ¶ 14.

{¶ 24} Courts "interpret lease provisions according to traditional contract principles" and therefore must endeavor " 'to carry out the intent of the parties, as that intent is evidenced by the contractual language.' " *Atelier Dist.* at ¶ 16, citing *Bucher v. Schmidt*, 3d Dist. No. 5-01-48, 2002-Ohio-3933, ¶ 13, and quoting *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. The parties' clearly expressed intent documented in a contract generally controls over common law. *Wildcat Drilling, L.L.C. v. Discovery Oil & Gas, L.L.C.*, 164 Ohio St.3d 480, 2020-Ohio-6821, ¶ 1, 16 (explaining that "[b]ecause parties have a fundamental right to contract, which includes the right to abrogate the common law, [the common law requirements] do not apply when the parties express a clear intent to abrogate those common-law requirements" and determining "[t]he common law on [the matter at issue] cannot supplant clear terms contained in a contract").

{¶ 25} Here, Michael challenges the trial court's determination that he breached the lease by leaving garbage on the floor, "defacing" the walls, breaking and not repairing windows, and not repairing a damaged gate.[1] (Appellant's Brief at 16-17.) Based on the summary judgment evidence presented, the trial court did not err in determining Michael breached the lease in these ways.

{¶ 26} Michael's duties to maintain, repair, and surrender the premises are clearly established in the applicable lease provisions:

ARTICLE VI
REPAIRS MAINTENANCE

> 6.1:   Landlord shall, at its expense, repair and maintain the structural soundness of the roof, exterior walls and foundation of the building not including doors, plate glass and windows.

---

[1] Although Michael mentions his right to remove the sign and interior doors here, he did not provide an argument linking that issue to the second assignment of error and instead references his trade fixture argument, which is the subject of the third assignment of error. *See* Appellant's Brief at 17. Accordingly, we will address Michael's arguments concerning the doors and sign at that time.

6.2: Tenant acknowledges having made a complete examination of the premises and accepts the Demised Premises "as is" in the condition existing on the date of occupancy of the Demised Premises. Tenant agrees to maintain at its expense all portions of the Demised Premises (except those portions to be maintained by Landlord pursuant to Section 6.1), specifically including, but not limited to, all plate glass, glass doors, exterior windows and doors, and all plumbing fixtures, electrical and lighting fixtures, and heating and air conditioning fixtures in good condition, reasonable wear and tear excepted. Tenant agrees to pay for all repairs and maintenance resulting from normal use and negligence. Tenant further agrees to repair or replace the same with equipment or material of like quality, when necessary.

Tenant shall keep the Demised Premises in good order and report any damage or need of repair to Landlord. In the event Tenant fails to make such repairs and perform such maintenance, Landlord will make such repairs and perform such maintenance. The expense so incurred by Landlord shall become due and payable at the next rent date after such payment is made and Landlord gives notice to Tenant that it has performed the repairs or maintenance and the cost thereof.

ARTICLE VII
ALTERATIONS

7.1: Tenant shall make no alterations, changes, additions or improvements to the Demised Premises without the prior written consent of Landlord, which consent shall not be unreasonably withheld.

7.2: Any and all alterations, changes, additions or improvements made to or upon Demised Premises by Tenant shall be and become a part of the real estate and the Landlord, except machinery, equipment, appurtenances, security system and trade fixtures placed therein or thereon by Tenant, which are easily or of temporary nature, and upon the expiration of this Lease, under any of its terms, Tenant shall not be entitled to any repayment or compensation therefore.

ARTICLE XXIII
TERMINATION

> 23.1: By the last day of the term hereof or on the earlier termination thereof, Tenant shall peaceably and quietly leave, surrender and deliver up to Landlord the Demised Premises, broom clean, together with any and all alterations, changes, additions and improvements which may have been made upon the said date, shall remove all of the Tenant's personal property from the Demised Premises and all property not so removed shall be deemed to have been abandoned and may be appropriated, sold, destroyed or otherwise disposed of by Landlord without notice to Tenant and without obligation to account therefore. Tenant shall reimburse Landlord for any cost incurred by Landlord to remedy any default of Tenant's responsibilities of this Section 23.1.

(Mot. for Summ. Jgmt., Ex. A-1 at 6.1-6.2, 7.1-7.2, and 23.1.)

{¶ 27} In summary, Michael agreed to maintain, in good condition with reasonable wear and tear excepted, all portions of the premises except the structural portion of the roof, exterior walls, and foundation of the building. Michael further agreed to repair or replace equipment and materials in these portions of the premises, when necessary, to generally keep the premises in good order and report any damage or need of repair to Oxford, to pay for all repairs and maintenance resulting from normal use and negligence, and to reimburse Oxford for any repairs and maintenance Michael failed to make. Michael additionally agreed that upon termination of the lease, he would leave the premises in a broom swept condition, remove his property, and reimburse Oxford for any cost incurred to remedy Michael's failure to comply with those terms.

{¶ 28} Oxford provided summary judgment evidence in the form of an affidavit, photographs, and invoices establishing, in part pertinent to this assignment of error, that Michael: (1) "failed to remove all of his property from the [p]remises, failed to clean out Michael's trash, and failed to leave the [p]remises in broom[]swept condition" resulting in $2,600 to remedy; (2) "defaced the walls * * * with graffiti and etchings," causing Oxford to incur $14,750 in additional expenses to "repair and paint the walls," including "sanding graffiti off of the wood walls and trim," dry wall repairs, skim coating the dry wall to address "carvings," and priming the walls and ceiling to cover graffiti prior to applying paint; (3) "damaged [the] gates" necessitating a $2,300 repair; and "damaged the windows" causing Oxford to pay $980 to repair them. (Mot. for Summ. Jgmt., Ex. A at 11-14, 18-20 and A-4.) This evidence is sufficient to establish that Michael breached the pertinent lease terms and

that those breaches caused Oxford damage or loss. Therefore, Oxford met its initial burden under Civ.R. 56 as the moving party.

{¶ 29} Michael responded in opposition to summary judgment by pointing to the lease, Oxford's photographs, and his own affidavit. Within the affidavit, Michael averred, in part pertinent to this assignment of error: the property was used as a "dive-bar"; "[t]he condition of the [p]remises was normal for the type of property when [he] turned it over to Oxford in August of 2021"; "[i]n this type of property, '[g]raffiti and etchings' as described by [Oxford], are normal and have a business purpose" and are located on walls he built and maintained at his own expense; the gate is 15 years old, was never repaired by Oxford, and "[i]t is normal for an item such as this to need repairs"; and the windows were installed at Michael's own expense, not maintained by Oxford, and were not unsealed or broken when he vacated the property although some window frames were "filled with plywood rather than glass[.]" (Memo. in Opp., Aff. at 9-10.)

{¶ 30} We find Michael's opposition to summary judgment insufficient to meet the reciprocal burden required by Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue of material fact for trial. In his affidavit, Michael did not deny Oxford's allegations but instead contended the various conditions were normal, had a business purpose, or concerned areas or things Michael paid for and that Oxford failed to maintain. However, under the terms of the lease, Michael was obligated to maintain the relevant portions of the premises such that it was in "good condition" and conduct repairs at his own expense—not Oxford. (Mot. for Summ. Jgmt., Ex. A-1 at 6.2.) As a result, Michael's averments as to Oxford's lack of maintenance of those areas, Michael's expense to install or maintain those areas, or the business purpose of the alterations do not contradict Oxford's evidence supporting Michael's breach of lease.

{¶ 31} Furthermore, in this case what constitutes "normal wear and tear" or a "normal" condition is not an issue of material fact. (Appellant's Brief at 26; Memo. in Opp., Aff. at 9.) First, Michael admits windows had plywood instead of glass, does not dispute Oxford's evidence that Michael damaged the gates, and does not dispute that the wall graffiti and etchings required not just painting, but multiple repair steps such as sanding wood walls and trim, fixing the dry wall, and skim coating to address the carvings. We agree with the trial court's assessment that these conditions cannot be categorized as "reasonable

wear and tear" when compared against Michael's contractual obligations in this lease. (Mot. for Summ. Jgmt., Ex. A-1 at 6.2.)  Moreover, even if Oxford's allegations of disarray and disrepair could be considered "normal" wear and tear as Michael suggests, he agreed to pay for "all repairs and maintenance resulting from normal use." (Mot. for Summ. Jgmt., Ex. A-1 at 6.2.)

{¶ 32} Michael's additional arguments to prevent summary judgment likewise fail. Michael contends the lease does not create a duty to "surrender in repair."  (Appellant's Brief at 25.)  In addition to improperly raising this issue for the first time on appeal, the plain terms of the lease obligated Michael to maintain the premises in good order and either repair the conditions at issue or reimburse Oxford for the cost of the repair; those lease terms do not otherwise absolve Michael for leaving the premises in a state of disrepair. Michael additionally contends he only had to return the premises in substantially the same condition as he received it, which in this case is a "dive bar" that he asserts on appeal was in "substantial disrepair," and similarly argues he is not liable for items damaged at the beginning of the tenancy.  (Appellant's Brief at 25.)  His argument is contradicted by his agreement to keep the premises in "good condition" and "good order" and leave it in broom swept condition.  (Mot. for Summ. Jgmt., Ex. A-1 at 6.2.)  These arguments additionally stand unsupported by summary judgment evidence beyond Michael's vague averments that "this is a college campus area bar— * * *a "dive bar" and the gate "is 15 years old" and "was never repaired." (Memo. in Opp. Aff. at 10.)  Michael did not aver the gate was damaged when he took the premises or otherwise testify to the original state of disrepair of the premises generally, as he now suggests.

{¶ 33} Overall, even construing the facts in Michael's favor, he has failed to present evidence to establish a genuine issue of material fact exists in this case concerning whether he breached his contractual duties to maintain and repair the premises and surrender the premises in a broom swept condition free of his personal property.  Accordingly, we hold that the trial court did not err when it determined no genuine issue of material fact exists for trial and Oxford is entitled to judgment, as a matter of law, on the breach of lease claims concerning the walls, gates, windows, and condition of the property upon surrender. Accordingly, the second assignment of error is overruled.

**C. Third Assignment of Error**

{¶ 34} In his third assignment of error, Michael contends that the trial court erred in finding he "could not remove [his own property]." (Appellant's Brief at 34.) He asks this court to determine whether "a tenant [may] be liable for removal of a trade fixture, where the common law allows and the relevant sections of the lease contract explicitly allows [a] tenant to remove trade fixtures[.]" (Appellant's Brief at 34.)

{¶ 35} As previously noted, "[t]he common law on [an issue] cannot supplant clear terms contained in a contract." *Wildcat Drilling, L.L.C.*, 164 Ohio St.3d at ¶ 16. Moreover, as explained in detail below, the terms of the lease necessary to resolve this issue are clear in this case. Specifically, the lease states:

ARTICLE VII
ALTERATIONS

7.1: Tenant shall make no alterations, changes, additions or improvements to the Demised Premises without the prior written consent of Landlord, which consent shall not be unreasonably withheld.

7.2: Any and all alterations, changes, additions or improvements made to or upon Demised Premises by Tenant shall be and become a part of the real estate and the Landlord, except machinery, equipment, appurtenances, security system and trade fixtures placed therein or thereon by Tenant, which are easily or of temporary nature, and upon the expiration of this Lease, under any of its terms, Tenant shall not be entitled to any repayment or compensation therefore.

7.3: Tenant may place or install trade fixtures or equipment as it deems desirable for the conduct of its business, and Tenant shall have the fight to remove from the Demised Premises, at any time, all personal property, equipment, furniture and fixtures, placed by it on or in the Demised Premises, whether nailed, bolted, or otherwise temporarily fastened to said Demised Premises. Any damage to the Demised Premises by the placement or removal of such property shall be repaired at Tenant's expense.

ARTICLE XX
SIGNAGE

20.1: Tenant shall not make any changes to the exterior of the Premises, install any exterior lights, decorations, balloons,

flags, pennants, banners, or painting, or erect or install any signs, windows or door lettering, placards, decorations, or advertising media of any type which can be viewed from the exterior of the Premises, without Landlord's prior written consent. Upon surrender or vacation of the Premises, Tenant shall have removed all signs and repair, paint, and/or replace the building fascia surface to which its signs are attached. Tenant shall obtain all applicable governmental permits and approvals for signs and exterior treatments. All signs, decorations, advertising media, blinds, draperies and other window treatment or bars or other security installations visible from outside the Premises shall be subject to Landlord's approval and conform in all respects to Landlord's requirements.

ARTICLE XXIII
TERMINATION

23.1: By the last day of the term hereof or on the earlier termination thereof; Tenant shall peaceably and quietly leave, surrender and deliver up to Landlord the Demised Premises, broom clean, together with any and all alterations, changes, additions and improvements which may have been made upon the said date, shall remove all of the Tenant's personal property from the Demised Premises and all property not so removed shall be deemed to have been abandoned and may be appropriated, sold, destroyed or otherwise disposed of by Landlord without notice to Tenant and without obligation to account therefore. Tenant shall reimburse Landlord for any cost incurred by Landlord to remedy any default of Tenant's responsibilities of this Section 23.1.

(Mot. for Summ. Jgmt., Ex. A-1 at 7.1-7.3, 20.1, and 23.1.)

{¶ 36} Regarding the interior door issue, in its motion for summary judgment, Oxford presented evidence that Michael removed interior doors from the premises and Oxford incurred $2,900.21 to replace them. In opposing summary judgment, Michael averred, "[t]he [interior] doors were placed in the premises by myself at my own expense." (Memo. in Opp. Aff. at 10-11.)

{¶ 37} These undisputed facts, applied to the lease, work in favor of Oxford. Michael did not deny he removed the interior doors, but instead argued he was entitled to do so because he installed them at his own expense. However, the terms of the lease mandate that any changes, additions, or improvements become a part of the premises without

compensation to Michael. The lease provision controlling termination reiterates that Michael's delivery of the premises back to Oxford includes surrendering any of his own additions or improvements. Furthermore, while the lease carved an exception for trade fixtures, no evidence suggests the interior doors were trade fixtures or particular to his business, as he now argues. Therefore, because Oxford met its initial burden under Civ.R. 56 as the moving party, and Michael failed to present evidence to establish a genuine issue of material fact exists in this case concerning his removal of the interior doors, summary judgment in favor of Oxford on this issue is appropriate.

{¶ 38} Summary judgment in favor of Oxford on the issue of the signage removal is likewise warranted in this case due to the nature of the claim. Oxford alleged in its complaint and set forth evidence in its motion for summary judgment that Michael breached the lease by removing Oxford's "signage box" from the roof of the property without permission, and that Michael's unauthorized removal of Oxford's signage box required purchasing a replacement. (Compl. at 2; Mot. for Summ. Jgmt., Ex. A at 15-16; Ex. A-5.) Michael did not dispute that he removed the signage box owned by Oxford or contradict Oxford's evidence that he did so without permission, as noted by the trial court. He instead averred that he paid to replace an unusable sign at his own expense, and therefore he owns the sign. On appeal he argues the sign is a trade fixture he had a right to remove.

{¶ 39} In making this argument—that he is justified in taking the sign he installed—Michael misconstrues the nature of the asserted breach. Oxford is seeking reimbursement for Michael's unauthorized removal of Oxford's existing signage box, not recovery for the new signage Michael installed and removed. In other words, even if Michael never installed a new sign, he still would be in breach of the lease for removing Oxford's original signage box without permission. Michael did not meet his reciprocal burden to show a question of material fact exists on this issue.

{¶ 40} As a result, pursuant to the clear terms of the lease and the Civ.R. 56 evidence presented in this case, Oxford is entitled to summary judgment in its favor concerning Michael's removal of the interior doors and the signage box. Accordingly, the third assignment of error is overruled.

**D. Fourth Assignment of Error**

{¶ 41} In his fourth assignment of error, Michael contends that the trial court erred as a matter of law "in its calculation of damages." (Appellant's Brief at 39.) For the following reasons, we disagree.

{¶ 42} In the most general sense, damages are awarded to compensate a party for injuries sustained that may be fairly attributed to the defendant. *See Landis v. William Fannin Builders, Inc.*, 10th Dist. No. 10AP-568, 2011-Ohio-1489, ¶ 37; *Fantozzi v. Sandusky Cement Prods. Co.*, 64 Ohio St.3d 601, 612 (1992). In cases involving breach of a contract, an award of money damages should be "designed to place the aggrieved party in the same position it would have been in had the contract not been violated." *Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 439 (1983). "Damages need not be calculated with mathematical certainty, but cannot be based on mere speculation and conjecture." *Atelier*, 2007-Ohio-7138, at ¶ 60, citing *Allied Erecting & Dismantling Co., Inc. v. Youngstown*, 151 Ohio App.3d 16, 2002-Ohio-5179, ¶ 64 (7th Dist.). "The plaintiff must show its entitlement to damages in an amount ascertainable with reasonable certainty." *Id.*, citing *Allied* at ¶ 64 and *Interstate Gas Supply, Inc. v. Calex Corp.*, 10th Dist. No. 04AP-980, 2006-Ohio-638, ¶ 59.

{¶ 43} In landlord-tenant breach of contract actions, "a lessor has a duty to mitigate damages caused by a lessee's breach of a commercial lease if the lessee abandons the leasehold." *UAP-Columbus JV326132 v. O. Valeria Stores, Inc.*, 10th Dist. No. 07AP-614, 2008-Ohio-588, ¶ 17, citing *Frenchtown Square Partnership v. Lemstone, Inc.*, 99 Ohio St.3d 254, 2003-Ohio-3648, paragraph one of the syllabus. The lessor's efforts to mitigate must be "reasonable" not "extraordinary measures to avoid excessive damages." *Id.* at ¶ 17. As an affirmative defense, the burden of proving mitigation of damages generally rests with the lessee. *Frenchtown Square* at ¶ 21; *Feller, L.L.C. v. Wagner*, 10th Dist. No. 11AP-759, 2012-Ohio-5972, ¶ 34; *Flower v. Hall*, 6th Dist. No. S-13-033, 2014-Ohio-1671, ¶ 14, citing *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, ¶ 23-24. As such, when faced with a lessor's properly supported motion for summary judgment, the lessee must respond with evidence creating a genuine issue of material fact. *Flower* at ¶ 14-15.

{¶ 44} Here, Michael raises essentially three issues to contest the trial court's imposition of damages: (1) the necessity and lack of evidence linking Michael and the

sought-after damages, including evidence of the original condition of the property; (2) the necessity and lack of evidence concerning diminution in market value; and (3) the trial court's failure to consider the reasonable cost of repairs.  (Appellant's Brief at 39-44.)

{¶ 45}  As to the first issue, Michael asserts that a landlord has the burden to show a "link between tenant and damages," and Oxford did not do so since he left the premises in "substantially the same condition" as when he moved in, which he again describes as a "dive bar[,]" and failed to present evidence documenting the condition of the premises at the time the parties entered into the lease.  (Appellant's Brief at 39-41.)  We agree with Michael that for a landlord to recover damages from a tenant, the landlord must submit sufficient evidence linking the tenant to those damages.  *Levine v. Kellogg*, 10th Dist. No. 18AP-694, 2020-Ohio-1246, ¶ 40.  *See Gianetti v. Teakwood, Ltd.*, 10th Dist. No. 15AP-413, 2016-Ohio-213, ¶ 12, 18-19 (explaining that to recover for a breach of contract claim, the plaintiff must establish the asserted damages resulted from the plaintiff's breach of the contract terms).  As one way to satisfy this burden, the landlord may present evidence regarding the condition of the premises both before the tenant moves in and after the tenant moves out of the premises.  *See, e.g.*, *Kellogg* at ¶ 40.  However, in this case, Michael's admissions link him to the damages.  He does not challenge the conduct underlying the property damage at issue that, as we previously explained, constituted breaches of the duties he assumed in the lease: he admits he removed the interior door and signage box, did not maintain or repair the gates and windows, did not repair the walls from his etchings and graffiti, and surrendered the property without sufficiently cleaning out trash and personal property.  In these circumstances, sufficient summary judgment evidence connects Michael to Oxford's asserted damages arising from the breaches of the lease.

{¶ 46}  Next, Michael contends Oxford was required to prove the diminution in market value of the premises due to the property damage.  With respect to breach of commercial lease actions involving property damage, the usual measure of compensation is the reasonable cost of repair; the difference in market value caused by the property damage may also be used to compensate the injured party if appropriate on the facts of the case.  *See Kellogg* at ¶ 43-44, 49 (explaining that in *Martin v. Design Constr. Servs., Inc.*, 121 Ohio St.3d 66, 2009-Ohio-1, ¶ 24, the Supreme Court of Ohio established that a plaintiff need not prove diminution in the market value of the property in order to recover the

reasonable costs of restoration but, in "a scenario in which a landlord fails to make repairs," the landlord may still be compensated by demonstrating the property damage resulted in a reduction in the market value of the property); *Selbee v. Van Buskirk*, 4th Dist. No. 16CA3777, 2018-Ohio-1262, ¶ 37, quoting *B&B Contrs. & Developers, Inc. v. Olsavsky Jaminet Architects, Inc.*, 7th Dist. No. 12 MA 5, 2012-Ohio-5981, ¶ 75 (" 'After *Martin*, courts addressing the issue have * * * refused to require diminution in value evidence as a mandatory element of damages for temporary damage to commercial realty.' "); *Case Leasing & Rental, Inc. v. Ohio Dept. of Natural Resources*, 10th Dist. No. 09AP-498, 2009-Ohio-6573, ¶ 28, 40-41 (applying the *Martin* rule in commercial property setting). Furthermore, while evidence of diminution in value is not required to award damages, either party may introduce evidence of the before-and-after market value of the property to inform the trial court's decision on whether the asserted cost of repair is reasonable. *Kellogg* at ¶ 44; *Martin* at ¶ 24. With these considerations in mind, we conclude Oxford was not obligated to provide evidence of diminution in value. While Michael could have attempted to show a lack of diminution in value to refute the reasonableness of the asserted costs to repair, he did not do so. Michael's argument in this regard lacks merit.

{¶ 47} Lastly, Michael asserts that the trial court failed to consider the reasonableness of the cost of the repairs. Specifically, Michael contends that he argued to the trial court that Oxford failed to mitigate damages by "mak[ing] Michael pay for" upgrades to the property and that any damages were de minimus. (Appellant's Brief at 45.) In Michael's view, the trial court should have, but failed to, "hold any hearing," take additional evidence, and order additional briefing and instead "simply adopted [Oxford's] averments without scrutiny" despite the issues Michael raised. (Appellant's Brief at 45-46.) He requests this court remand the case with an order for the trial court to "take evidence on damages and apply the proper analysis." (Appellant's Brief at 46.)

{¶ 48} We find the trial court's resolution of damages to be appropriate in this case. A trial court may determine contract damages on the parties' Civ.R. 56 motions and may do so without holding a hearing. *See* Civ.R. 56(D) (contemplating that damages may be resolved on the parties' motions); *Mariner Fin., L.L.C. v. Childs*, 10th Dist. No. 21AP-19, 2021-Ohio-3935, ¶ 8 ("Civ.R. 56 does not require a trial court to hold an evidentiary hearing."). *See, e.g.*, *Lehrer v. McClure*, 5th Dist. No. 2013CA00039, 2013-Ohio-4690,

¶ 24 (finding trial court's determination of damages on summary judgment appropriate where the movant submitted an affidavit of the amount due under the contract, the appellant failed to present any evidence in response to appellees' motion for summary judgment to dispute the amount, and the trial court utilized this amount in awarding damages); *Nationstar Mtge. L.L.C. v. Cody*, 6th Dist. No. OT-18-041, 2020-Ohio-5553, ¶ 30 (explaining, "[i]t is within a trial court's discretion to decide that a damages hearing is necessary," and determining the trial court did not abuse its discretion in awarding appellee damages on summary judgment where the appellant had failed to present evidence contrary to the appellee's accounting); *WM Capital Partners, L.L.C. v. Beaver*, 4th Dist. No. 14CA19, 2015-Ohio-2772, ¶ 38 (determining Civ.R. 56 "allows the moving party to rely on proper affidavits in order to establish a claim for damages").

**{¶ 49}** Moreover, while Michael suggests he needed more time to gather evidence to oppose summary judgment, he did not move the trial court for a continuance under Civ.R. 56(F). *See In re Estate of Carte v. Bringardner*, 10th Dist. No. 22AP-787, 2023-Ohio-4286, ¶ 43-44, citing Civ.R. 56(F) (explaining that Civ.R. 56(F), which "provides the remedy for a party seeking a continuance to conduct discovery relevant to a motion for summary judgment," must include an affidavit with sufficient reasons stating why the party cannot present sufficient facts to justify its opposition and is subject to the trial court's discretion.) In this case, Michael neither opposed Oxford's summary judgment evidence documenting the costs to repair the premises by pointing to or presenting Civ.R. 56 evidence nor moved the trial court for a Civ.R. 56(F) continuance to obtain evidence necessary to do so. In these circumstances, the trial court did not err by declining to hold a hearing or take additional evidence on damages and by deciding damages on the summary judgment briefs and evidence presented.

**{¶ 50}** To the extent Michael contends the trial court wholly ignored his arguments, his argument is against the record: the trial court did address de minimus damages and mitigation. *See* Trial Court Decision at 12 (discussing Michael's mitigation argument) and 13 (discussing Michael's de minimus argument). We agree with the trial court's assessment that Michael did not respond to Oxford's motion for summary judgment with evidence creating a genuine issue of material fact on the de minimus damages or mitigation issues, and we note Michael did not provide legal authority on appeal to convince us otherwise. He

therefore has not demonstrated the trial court's decision on those issues lacked merit. *Flower* at ¶ 14-15; Civ.R. 56(E); *Petro*, 2006-Ohio-943, at ¶ 94.

{¶ 51} Overall, having independently reviewed the summary judgment motions and evidence, we find Oxford demonstrated its entitlement to damages in an amount ascertainable with reasonable certainty and Michael did not present evidence to oppose those amounts. Michael does not challenge specific costs of repair on appeal and, as explained above, the various issues he raises concerning the trial court's analysis of damages lack merit. As a result, we conclude the trial court did not err in awarding Oxford the money damages it sought on summary judgment. Accordingly, Michael's fourth assignment of error is overruled.

### E. Fifth Assignment of Error

{¶ 52} In his fifth assignment of error, Michael contends the trial court erred in awarding attorney's fees. For the following reasons, we agree to the limited extent explained below.

{¶ 53} " 'Ohio has long adhered to the "American rule" with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation.' " *Cruz v. English Nanny & Governess School*, 169 Ohio St.3d 716, 2022-Ohio-3586, ¶ 35, quoting *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 7. "However, there are three well-established exceptions to the American rule: (1) when a statute creates a duty to pay attorney fees, (2) when the losing party acted in bad faith, and (3) when the parties contracted to shift the fees." *Cruz* at ¶ 36, citing *Wilborn* at ¶ 7. In this case, only the third exception is at issue: the trial court based its decision to award attorney's fees on Sections 17.1 and 17.2 of the lease, and those sections of the lease are likewise the sole basis Oxford presents on appeal to retain the award of attorney's fees.

{¶ 54} Sections 17.1 and 17.2 of the lease describe Oxford's rights and remedies upon certain acts of tenant default and is designed to work in addition to "any other remedies" provided in the lease or at law. (Mot. for Summ. Jgmt., Ex. A-1 at 17.1-17.3.) It reads, in pertinent part:

> Upon each occurrence of an Event of Default * * * Landlord may at any time thereafter at its election: terminate this Lease * * * and/or pursue any other remedies at law or equity.

> If Landlord terminates this Lease, Landlord may recover from Tenant the sum of: all Base Rent and all other amounts accrued hereunder to the date of such termination; the cost of reletting * * * including * * * costs of removing and storing Tenant's * * * property, repairing, altering, remodeling, or otherwise putting the Premises into condition acceptable to a new Tenant or tenants, *and all reasonable expenses incurred by Landlord in pursuing its remedies, including reasonable attorneys' fees* and court costs[,] and the excess of the then present value of Base Rent and other amounts payable by Tenant * * * over the present value of any net amounts which Tenant establishes Landlord can reasonably expect to recover by reletting the Premises for such period[.]

(Emphasis added.) (Mot. for Summ. Jgmt., Ex. A-1 at 17.2.) "[E]vents of default" to trigger remedies under this section include, in pertinent part: "Tenant shall fail to pay any installment of rent on or before the 5th day of the month following notice of failure to pay"; and "Tenant shall fail to comply with any term, provision or covenant of this Lease, other than the payment of rent, and shall not cure such a failure within thirty (30) days or such other reasonable time as required to cure such failure after written notice thereof to Tenant." (Mot. for Summ. Jgmt., Ex. A-1 at 17.1.)

{¶ 55} Here, in its decision on summary judgment, the trial court ordered Michael to pay "reasonable attorney's fees." (July 12, 2023 Decision at 15.) The only explanation for that determination is a one-sentence in its recitation of facts, which cites to Sections 17.1 and 17.2, and states: "[t]he Lease permits [Oxford] to recover from [Michael] all expenses incurred by [Oxford] in pursuing its remedies, including reasonable attorney's fees and court costs[.]" (July 12, 2023 Decision at 3.) Following the parties' stipulation to a reasonable amount of attorney's fees, the trial court granted Oxford a $13,000 award of attorney's fees based on "the reasoning, findings, and holdings set forth in its [summary judgment decision]," "good cause shown," and "the Stipulation of the Parties." (Dec. 20, 2023 Jgmt. Entry at 1.) The trial court stated, "an award of $13,000.00 in attorney's fees is reasonable under the circumstances of this case." (Dec. 20, 2023 Jgmt. Entry at 1.)

{¶ 56} Michael argues that the attorney's fees provision in Sections 17.1 and 17.2 did not apply since Oxford did not terminate the lease due to a Section 17.1 event of default but rather exercised its right to terminate the lease under the "month-to-month" lease status for other reasons. (Appellant's Brief at 48.) Under Michael's reasoning, even if Oxford is

entitled to remedies under other sections of the lease for leaving the premises in a state of disrepair after terminating the lease based on the month-to-month agreement, as previously discussed in relation to other assignments of error, Section 17.2 is inapplicable on these facts and therefore the trial court was not authorized to impose attorney's fees.

**{¶ 57}** Oxford contends the parties did contract to shift responsibility for attorney's fees in the event the lease was terminated, as agreed to in Section 17.2, and Oxford did not need to formally issue a declaration of default. Oxford argues that once Michael received the termination of lease letter, "[he] knew or should have known he was at risk of being obligated to pay Oxford for its attorney's fees [if] he failed to return the Premises in good order and broom[]swept condition." (Appellee's Brief at 33.)

**{¶ 58}** We agree with Michael that the trial court erred by imposing attorney's fees in this case. First, it is unclear to what extent the trial court relied on the parties' stipulation to the amount of attorney's fees as a basis to conclude that award of attorney's fees are warranted generally. Considering the language of the stipulation and noting Oxford does not contend the stipulation alone could authorize an award of attorney's fees, the trial court's reliance on the stipulation as a basis to award attorney's fees would be in error. Further, even if the trial court did not rely on the stipulation to deem an attorney's fees award appropriate and relied only on the language of the lease, the trial court erred in resolving the issue of attorney's fees as a matter of law on this record. The trial court determined summary judgment evidence showed the "[l]ease expired," Oxford sent Michael "written correspondence terminating the month-to-month [l]ease," and Sections 17.1 and 17.2 of the lease generally permitted Oxford to recover attorney's fees. (July 12, 2023 Decision at 2-3.) The trial court did not, however, address whether the evidence showed Section 17.2 attorney's fees were authorized due to the occurrence of an event of default that led Oxford to terminate the lease.

**{¶ 59}** Whether a Section 17.1 event of default occurred that caused Oxford to terminate the lease remains a genuine issue of material fact concerning the availability of Section 17.2 attorney's fees. As a result, the trial court erred in determining, on summary judgment, that Michael must pay attorney's fees. *See* Civ.R. 56(C); *Flower* at ¶ 22, quoting *Executive Business Ctrs., Inc. v. Transpacific Mfg., Ltd.*, 6th Dist. No. L-08-1060, 2009-

Ohio-516, ¶ 55 (" '[R]ecovery of attorney fees pursuant to a contractual provision is not permitted unless the parties specifically negotiated the contractual term so providing.' ").

{¶ 60} Considering the nature of the error, we remand the matter for the trial court to conduct further proceedings to determine, in the first instance, whether the circumstances of this case authorize the award of attorney's fees pursuant to the lease. If the trial court determines attorney's fees are warranted, the trial court must reassess whether the parties' stipulation, which neither defines the extent of representation it covers nor provides documentation to ascertain that information, remains a reasonable amount compared to the actual attorney services provided. *See Nori v. Nori*, 58 Ohio App.3d 69, 75 (12th Dist.1989) ("The parties may have agreed to the reasonableness of the [attorney's] fees but the amount of the award is still within the discretion of the trial court."); *Law Offices of Russell A. Kelm v. Selby*, 10th Dist. No. 15AP-1135, 2017-Ohio-8239, ¶ 29 ("An award of attorney fees must be based on actual services performed, and there must be some evidence supporting the court's determination."); *In re Estate of Schwenker*, 10th Dist. No. 18AP-320, 2019-Ohio-2581, ¶ 10 ("[T]he evidence * * * must substantiate the award of fees as being reasonable."). *See also Scott v. First Choice Auto Clinic, Inc.*, 10th Dist. No. 23AP-48, 2023-Ohio-3855, ¶ 45, citing *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145 (1991) and *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 160 Ohio St.3d 32, 2020-Ohio-1056, ¶ 19 (explaining that there is a strong presumption that the "lodestar amount"—the attorney's reasonable hourly rate multiplied by the number of hours reasonably worked on the litigation—is the proper amount for an attorney fee award).

{¶ 61} We note the trial court is required to explain, with reasonable specificity, its determination of the amount of an attorney's fees award. *See Calypso Asset Mgt., L.L.C. v. 180 Indus., L.L.C.*, 10th Dist. No. 18AP-53, 2019-Ohio-2, ¶ 29 ("Although the trial court exercises broad discretion in applying the lodestar method, it must state the basis for the fee determination."); *Phoenix Lighting Group, L.L.C.* at ¶ 17-19, quoting *Perdue v. Kenny A.*, 559 U.S. 542, 558 (2010) (" 'It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination' to permit 'adequate appellate review[.]' "); *Bittner* at 145 (explaining that, when making an attorney fee award, the trial court must "state the basis for the fee determination" to allow for meaningful appellate review).

{¶ 62} Accordingly, Michael's fifth assignment of error is sustained to the limited extent set forth above.

## V. CONCLUSION

{¶ 63} For the reasons stated in this decision, Michael's first, second, third, and fourth assignments of error are overruled, and his fifth assignment of error is sustained to a limited extent. The cause is remanded to the Franklin County Court of Common Pleas to conduct further proceedings, consistent with the decision, to determine the availability of attorney's fees under Sections 17.1 and 17.2 of the lease on the facts of this case and, if necessary, to determine the reasonable amount of attorney's fees.

*Judgment affirmed in part and reversed in part*;
*cause remanded with instructions.*

DORRIAN and LELAND, JJ., concur.

_____